OPINION OF THE COURT
Arthur D. Spatt, J.
BACKGROUND
Sometime prior to December 27,1977, the Barto Electric Co., Inc. (hereinafter Barto) was engaged as an electrical subcontractor by E. W. Howell Corp. (hereinafter Howell), the general contractor, in connection with construction work being performed at a job site in Mineóla, New York. *245 On or about December 27,1977, George Trznadel, while in the employ of Barto at the aforesaid job site, as an electrician, and apparently while working in an area of the job site being used by “various trades”, stepped from a ladder onto a piece of “B X cable” lying beneath the ladder. Stepping upon the cable, Trznadel apparently lost his footing, fell to the ground and sustained injury.
By summons and complaint dated August 17, 1978, Trznadel commenced an action seeking to recover damages as against the general contractor, Howell. Paragraph 8 of said complaint alleges in pertinent part, as follows: “eighth: That the aforesaid accident and resulting injury to the plaintiff (Trznadel) was caused wholly and solely by reason of the carelessness and negligence of the defendant (Howell) in failing to provide the said plaintiff with a safe place to work, in violating the statutes and ordinances applicable to the construction work being then undertaken by the said defendant and by the plaintiff in the course of his employment, in failing to ascertain that the plaintiff would be free from any danger while working as aforesaid, in failing to warn the plaintiff of the dangerous situation confronting him, in failing to take proper safeguards to ascertain that the plaintiff would not sustain an injury during the course of his said work, in creating a trap into which the plaintiff was caused to fall.” (Emphasis supplied.)
Subsequently, on or about March 1, 1979, defendant (third-party plaintiff) Howell served a third-party summons and complaint upon Barto. The third-party complaint set forth four causes of action. The first, second and third causes of action sought “indemnity” or contribution as against Barto, assuming plaintiff’s success in the primary action, based upon allegations that the “affirmative, active, and primary negligence of Barto” and/or the breach of contract and/or breach of warranty of Barto was the primary (active) cause of or contributed to plaintiff Trznadel’s sustaining of injury.
As a “fourth cause of action”, Howell sought indemnification (contractual) from Barto based upon a particular alleged provision contained in the general agreement en *246 tered into by Howell and Barto with respect to “work, labor and services” to be performed.
At the time that Trznadel sustained his injury, Barto maintained two policies of insurance material to this decision.
By virtue of a policy issued by the State Insurance Fund (State Fund), Barto insured itself against liability to its employees for claims made by them under the Workers’ Compensation Law. This policy not only provided coverage for “direct” claims made by employees, but also “covered” Barto as to certain “third-party claims”. Specifically, the policy provided in pertinent part, as follows:
“in consideration of the payment of the premium stated in the Declaration attached to and forming a part of this policy, THE STATE INSURANCE FUND HEREBY INSURES the employer therein named as respects personal injuries sustained by his employees, including death at any time resulting therefrom as follows * * *
“One (b): agrees to indemnify this employer against loss by reason of the liability imposed upon him by Law for damages on account of such injuries to such employees wherever such injuries may be sustained * * * including the liability imposed upon this employer by reason of a suit or claim brought against him by another to recover the amount of damages obtained from such other by an employee of the employer for injuries sustained by such employee arising out of and in the course of his employment.
“These obligations are limited to the liability imposed by law upon the employer for negligence but
“(1) specifically exclude any liability assumed by the employer under any contract entered into with any other person, association or organization”.
Thus, while the afore-mentioned State Fund policy specifically provided coverage for Barto as against “third-party” claims seeking indemnification for damages paid by the third party to employees of Barto arising from injuries said employees sustained in the course of their employment for Barto — the policy simultaneously and specifically excluded coverage for third-party claims seeking *247 indemnification premised upon a contract to indemnify between Barto and the third party.
Barto was also insured by a “comprehensive general liability” policy issued by Aetna Casualty and Surety Co. (hereinafter Aetna) on or about April 1,1977, under policy No. 01AL266528. This policy included a “contractual liability” indorsement, designated “CC5165”.
The “comprehensive general liability” policy provided in pertinent part, as follows:
“1. BODILY INJURY LIABILITY COVERAGE
“PROPERTY DAMAGE LIABILITY COVERAGE
“The company will pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies”.
This coverage was made subject to certain specified exclusions, denominated (a) through (q). Exclusions (a), (i) and (j), pertinent herein, provided as follows:
“Exclusions
“This Insurance does not apply:
“(a) to liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named Insured’s products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner; * * *
“(i) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen’s compensation, unemployment compensation or disability benefits law, or under any similar law;
“(j) to bodily injury to any employee of the Insured arising out of and in the course of his employment by the insured, or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured under an incidental contract.” (Emphasis supplied.)
The contractual liability indorsement provided, in pertinent part, as follows:
*248 “COVERAGES — CONTRACTUAL BODILY INJURY LIABILITY CONTRACTUAL PROPERTY DAMAGE LIABILITY
“The company will pay on behalf of the Insured all sums which the insured, by reason of contractual liability assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend.”
This indorsement also has, as part thereof, certain specified exclusions denominated (a) through (s). Exclusion (f), pertinent herein, provided as follows:
“This insurance does not apply * * *
“(f) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen’s compensation, unemployment compensation or disability benefits law, or under any similar law”.
The terms of exclusion (j), appearing under the comprehensive general liability policy, did not and does not appear as an exclusion under the contractual indorsement.
Upon receipt of Howell’s third-party complaint, Barto tendered the defense of same to both the State Insurance Fund and Aetna.
It appears that the State Fund undertook Barto’s defense subject to a proviso, to wit: that State Fund, pursuant to the exclusion in their policy, would not be liable for any judgment obtained by Howell based upon a recovery on the alleged contractual “hold-harmless” agreement, that is, the fourth cause of action.
Aetna refused to defend. It asserted, by letter, inter alia, that “It is our contention that this [the third-party action] *249 will be a compensation case and should be handled by the State Insurance Fund under the IB portion of their policy.”
Thereafter, Barto, represented by counsel supplied by State Fund, served a fourth-party summons and complaint dated July 30, 1979, upon Aetna. Said complaint demanded judgment over against Aetna for indemnity in the amount of any judgment awarded to plaintiff Trznadel or third-party plaintiff Howell, and also sought reimbursement for counsel fees and expenses incurred by Barto in defending the primary and third-party actions.
Thereafter, at a pretrial conference, the action commenced by plaintiff Trznadel was settled for the agreed sum of $12,000. Pursuant to stipulation, the parties agreed that defendant Howell is fully responsible to plaintiff Trznadel for the agreed sum. It was further agreed that third-party plaintiff Howell is entitled to be indemnified by Barto for said sum — either by dint of common-law indemnification, contractual indemnification, or both.
THE ISSUE
In effect, the only remaining issue in controversy is that raised by the fourth-party complaint, to wit: is State Fund or Aetna or both liable to Barto under their respective policies. The parties agreed that this issue should be resolved by the court upon an agreed statement of facts which, after lengthy period of formulation, has now been submitted.

The Agreed Statement of Facts

Among the provisions of the agreed statement of facts are the following:
“4. It is further conceded E.W. Howell Co. is fully responsible to plaintiff, however, E.W. Howell is entitled to be completely indemnified either by contract, common law or contribution.
“5. At the time of the accident there was outstanding a contract between E.W. Howell Company and Barto Electric Co., Inc., a true copy of which is attached and marked Exhibit ‘A’.
“Contained in that contract was an indemnification clause which reads as follows: The Subcontractor hereby assumes entire responsibility and liability for any and all *250 damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the subcontractor or otherwise, and to all property, caused by, resulting from, arising out of, or occurring in connection with the execution of the work provided for in this contract; and if any person shall make a claim for any damage or injury (including death resulting therefrom) as hereinabove described, whether such claim be based upon the owner or E.W. Howell Co. alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of the owner or E.W. Howell Co., the subcontractor agrees to indemnify and save harmless the owner and E.W. Howell Co., their agents, servants and employees from and against any and all loss, expenses, damage, or injury that the owner or E.W. Howell Co. may sustain as a result of any such claim and the subcontractor agrees to assume, on behalf of the owner and E.W. Howell Co., the defense of any action at law or in equity, which may be brought against the owner or E.W. Howell Co. upon such claim and to pay on behalf of the owner or E.W. Howell Co. upon their demand, the amount of any judgment that may be entered against the owner or E.W. Howell Co. in any such action except that the subcontractor’s agreement shall not pertain to any loss, expense, damage or injury caused by or resulting from the sole negligence of E.W. Howell Co., the owner, their agents, or employees, unless said agreement is expressly permitted by the law of the applicable State ...’
“7. It is further agreed the general contractor E.W. Howell Co. sued herein as E.W. Howell Corp. is negligent as a matter of law but are not actively but at best passively or vicariously responsible.
“issue
“Does E.W. Howell Company recover against third party defendant Barto based on common law, or contract indemnification, or a combination of both.” (Emphasis supplied.)
The stipulated issue is posed to resolve the actual dispute, namely, does the State Fund or the Aetna policy, or both, cover the loss sustained by Barto in indemnifying Howell in the third-party action?
*251 Before addressing the assertions of the parties, two points must be noted.
First, the agreed statement of facts, which, to a certain degree defines the parameters of this court’s inquiry, fails to state that Barto was guilty of any “active” or “primary” negligence bringing about Trznadel’s injury. Such fact may not be presumed. What is presumed, however, given the close attention given the stipulation by the experienced counsel for each party, is that the absence of such fact was intended.
Secondly, Barto’s brief raises, at pages 39 and 43, two points not part of the stipulated submission, to wit: (a) a claim that Aetna’s disclaimer letter was insufficient, and (b) a claim by Barto that, at a minimum, Aetna is liable for counsel fees and expenses.
In light of this court’s ultimate holding, assuming it to be properly before the court, claim “(a)” is moot. However, in order to determine whether claim “(b)” (asserted in the fourth-party complaint) is properly before the court and, if so, whether and to what extent Barto is entitled to recover counsel fees and expenses from Aetna, the court directs that counsel for all parties appear before me for oral argument on January 18, 1982, at 9:00 a.m. sharp.

Contentions

Fourth-party plaintiff Barto (in actuality counsel provided for Barto by State Fund) contends that only Aetna, under the contractual liability policy purchased by Barto, is responsible for the indemnification of Barto for its liability to Howell in the third-party action.
This is so, argues Barto, because the concededly valid indemnity agreement (contract) between Howell and Barto is the exclusive vehicle upon which Howell may seek indemnification. That is, Barto maintains that as there exists a valid and applicable indemnification agreement wherein the parties specifically allocated where the burden of loss shall rest, Howell may not circumvent such agreement and obtain indemnification from Barto on a theory of “common-law indemnification”. Assuming Howell’s exclusive source of indemnification to be “contractual”, Barto notes that State Fund’s policy specifically excludes “any *252 liability assumed by the employer (Barto) under any contract”. Further, while State Fund apparently concedes that its policy would cover Barto’s “common-law” duty to indemnify, such avenue of indemnification is not available to Howell in this case.
Finally, Barto maintains that Aetna’s “contractual indorsement” specifically covers liability to Barto arising from such “contractual indemnification” agreement.
Not so, argues Aetna. It contends that, notwithstanding the indemnity agreement, third-party plaintiff Howell, who was guilty of only vicarious or passive negligence, is entitled to recover over against its subcontractor Barto on both common-law and contractual indemnification. In that regard, Aetna maintains that the “contractual exclusion” in the State Fund policy relied upon by Barto is not dispositive of State Fund’s liability since State Fund is still liable to indemnify Barto to the extent that Howell’s claim for indemnification may be deemed one arising in common law.
Aetna asserts not only that State Fund is liable, but it disclaims its own responsibility. In so doing, it relies on exclusion (j) contained in the “comprehensive liability” portion of its policy. Aetna maintains that this provision, which excludes coverage as to any “obligation of the insured to indemnify another because of damages arising out of * * * bodily injury to any employee * * * of the insured”, is applicable to both the “common-law” and “contractual” theories of indemnification by Howell against Barto.
CONCLUSIONS
Indemnity has been defined as “an obligation or duty resting on one person to make good or to make reimbursement for any loss or damage another has incurred while acting at his request or for his benefit, or any loss or damage resulting from the conduct of one of the parties or of some other person or from a specified contingency.” (See 28 NY Jur, Indemnity, § 1.) Whether it be express or implied, most claims for indemnification arise out of contract law. That is, “‘[t]he right to indemnification may arise from contractual relations or from the status of the *253 parties as a matter of law, or it may be imposed by statute.’ ” (See Magwood v Jewish Hosp. & Med. Center of Brooklyn, 96 Misc 2d 251, 255, citing 28 NY Jur, Indemnity, § 10.)
It has long been recognized that by virtue of an express agreement to indemnify, a party may insulate itself against loss resulting from its own liability for negligence. That is, parties to an agreement (subject to certain public policy exclusions), may agree to a total shifting of economic loss resulting from the negligence of one of the parties. (See IB Warren, Negligence, Indemnity and Contribution, § 1.00 et seq.; see Margolin v New York Life Ins. Co., 32 NY2d 149; 28 NY Jur, Indemnity, § 5.) Thus, assuming a valid contract to indemnify and its applicability to the particular loss at issue, the indemnitee may normally enforce said contract notwithstanding his own conduct. (See Vey v Port Auth. of N. Y. & N. J. 54 NY2d 221; IB Warren, Negligence, Indemnity and Contribution, § 1.03.)
In addition to the “express” contract to indemnify, it is firmly established that “a right of implied indemnification will arise in favor of one who is compelled to pay for another’s wrong”. (See Magwood v Jewish Hosp. & Med. Center of Brooklyn, supra, p 255.) This “implied contract” of indemnity arises by operation of law to prevent a result which may be unjust or unsatisfactory. (See Gates-Chili Cent. School Dist. v State of New York, 55 AD2d 44.)
The underpinnings of this doctrine of “implied” or “quasi-contractual” or “common-law” indemnification were recently clearly set forth in Mauro v McCrindle (70 AD2d 77, 80-81) as follows:
“The precepts of quasi-contractual indemnification have a long history in the common law and reflect an equitable abhorrence of unjust enrichment. An early New York statement of the common-law doctrine appears in Oceanic Steam Nav. Co. v Compañía Transatlántica Española (134 NY 461,467-468), wherein the court stated: ‘[Ojne who has been held legally liable for the personal neglect of another is entitled to indemnity from the latter, no matter whether contractual relations existed between them or not, and that the right to indemnity does not depend upon the fact *254 that the defendant owed the plaintiff a special or particular legal duty not to be negligent. The right to indemnity stands upon the principle that every one is responsible for the consequences of his own negligence, and if another person has been compelled (by the judgment of a court having jurisdiction) to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him.’
“In Dunn v Uvalde Asphalt Paving Co. (175 NY 214, 217) common-law indemnification was described as: ‘[T]he rule of law under which a person guilty of negligence is charged with the responsibility for his wrongful act, not only directly to the person injured, but indirectly to a person who is legally liable therefor. In the latter case the wrongdoer stands in the relation of indemnitor to the person who has been held legally liable, and the right to indemnity rests upon the principle that every one is responsible for the consequences of his own wrong, and if another person has been compelled to pay the damages which the wrongdoer should have paid the latter becomes liable to the former. (Village of Port Jervis v. First Nat. Bank, 96 N. Y. 550; Oceanic S.N. Co. v. Compania T.E., 134 N. Y. 461.)’
“The thrust of the above statements is the simple principle that ‘everyone is responsible for the consequences of his own acts and this responsibility extends not only to the person directly injured, but also to one indirectly harmed by being cast in damages by operation of law for the negligent act’ (IB Warren’s NY Negligence, ch 10, § 2.01, p 641). As between tort-feasors, the one whose negligent act or omission directly resulted in the injuries is primarily liable and the one who is liable to the third person in the first instance, by operation of law, is secondarily liable (see Kelly v Diesel Constr. Div. of Carl A. Morse, Inc., 35 NY2d 1, 7).”
Thus, unlike the case of an express contract to indemnify, the indemnitee seeking indemnification upon a common-law theory must have been legally only “passively” liable to the injured party, and the indemnitor must be the actual or actively negligent party. (See Kurek v Port Chester Housing Auth., 18 NY2d 450.)
*255 The parties have presented the issue as to whether the indemnitee possessed of a valid, applicable and enforceable express contract can disregard same and seek recovery against the indemnitor upon common-law principles. If Howell could do so, then, Aetna argues, State Fund would be liable under the general terms of its policy which does cover noncontractual indemnification. There appears to be a conflict of authority with respect to this point. (Cf. Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d 34; Gates-Chili Cent. School Dist. v State of New York, supra; Continental Cas. Co. v Canadian Universal Ins. Co., 605 F2d 1340; Davis v Smith, 79 Me 351; 42 CJS, Indemnity, §28.)
Although this court is inclined to believe that the existence of a valid and applicable indemnity agreement between indemnitee and indemnitor forestalls or supersedes the creation of a “quasi-contractual” right to indemnification, the court need not and does not, on the facts of this case, so hold. For, on the facts here stipulated to, there is no indication that Barto was liable for any active negligence so as to give rise to a “common-law” right to indemnification by Howell. As this court should not rule on hypothetical questions, the absence of any “common-law” indemnification in this case forecloses the necessity of a direct ruling on the issue as to whether, given the contractual remedy, a “common-law” indemnification may exist in tandem. Thus, as there is presented here only a “contractual” basis for indemnification, and as the State Fund policy specifically excludes such a basis of recovery from its coverage, on the facts presented, State Fund is not liable over to Barto.
Further, upon a reading of the entire Aetna policy, the court believes that such policy does indeed cover Bar-to’s contractual indemnification liability to Howell. The court finds that a fair reading of the subject Aetna policy discloses that exclusion (j) contained in the “comprehensive liability” portion of such policy was intended to be applicable only to that particular portion of the policy and was not intended as a further limitation upon the coverage of the “contractual indorsement”. (See, generally, 1 Couch, Insurance 2d, § 15:30.) The “contractual indorsement” it *256 self contained numerous and specific exclusions to its coverage. It is significant that exclusion (j) is not included in such exclusions, nor is there any reference to such exclusion. Certainly, had Aetna, the drafter of the detailed instrument, meant to include exclusion (j) in the “contractual indorsement”, it could and would have done so.
Finally, the court finds that exclusion (f) contained in the “contractual indorsement” does not bar Barto’s claim of coverage under the Aetna policy. (See Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co. of N. Y., 45 NY2d 55.)