GARY A. SOLONDZ, Respondent, v GARY G. BARASH et al., Appellants. [639 NYS2d 561] —Cardona, P. J.

In early 1992, plaintiff became interested in an investment plan offered by Dunewood Funding Corporation (hereinafter DFC) after speaking with Robert Shapiro, a principal of DFC. After expressing his desire to pursue the matter, plaintiff received two proposed agreements, one denominated an "escrow agreement" and the other a "business agreement". He thereafter arranged to meet with defendant Gary A. Barash at Barash's law firm, defendant Matays, Barash & Kretschmann. Barash was Shapiro's attorney and served as the escrow agent for DFC's transactions. At the meeting, Barash explained the mechanics of the plan which called for the investor to deposit money into an escrow account which DFC would draw on to purchase mortgages. The mortgages so acquired would be titled to the investor. When a mortgage was sold or redeemed, the investor would release his/her interest in the mortgage and the funds drawn from the escrow account would be replaced. According to plaintiff, a high rate of return was promised. On June 22, 1992, plaintiff, Barash and Shapiro executed the escrow agreement. Plaintiff executed three of the business agreements on various occasions, each time investing certain sums of money which were deposited into the escrow account.

Plaintiff allegedly sustained losses which he attributed to two causes. First, whenever a mortgage titled in his name was sold, the purchaser would make the check payable directly to Shapiro instead of to him or Barash (as the escrow agent). Shapiro would deposit the money into his own account. Second, plaintiff's funds were also supposed to have been protected by the requirement that plaintiff's investment in a mortgage would not exceed 40% of the fair market value of the real property securing the mortgage. This condition was set forth in each business agreement. Plaintiff claims that he suffered further losses because the 40% loan to value ratio was not always met and he acquired mortgages at a price higher than the value of the real property securing such mortgages.

Plaintiff commenced this action against Barash and his law firm asserting causes of action for an accounting, legal malpractice, breach of a confidential relationship, negligent misrepresentation and breach of contract based on the attorney-client relationship. Plaintiff claimed that Barash agreed to represent him as his attorney in certain transactions in which

plaintiff acquired mortgages and in all transactions in which plaintiff sold the mortgages acquired through the plan. He also contended that Barash agreed to confirm that the 40% loan to value ratio would be met and that he failed to undertake that responsibility. Plaintiff further alleged that Barash told him that the plan was safe and secure, and that he accepted Barash's representations concerning how the plan worked as well as Barash's assurances that when his mortgages were sold, payments would go directly into the escrow account.

After issue was joined and some discovery completed, defendants moved for summary judgment. Plaintiff opposed the motion and cross-moved to amend his complaint to add a cause of action for fraud. Supreme Court denied defendants' motion and granted plaintiff's cross motion, prompting this appeal by defendants.

We turn first to the causes of action alleging legal malpractice and breach of contract. Defendants contend that these causes of action must fail because there was never an attorney-client relationship. In support of this claim, they rely on the terms of the escrow agreement which provides in part that: "[Plaintiff] understand[s] and acknowledge[s] that [Barash is] not acting in any capacity as either [plaintiff's] attorney or as an investment advisor, and that [Barash is] not evaluating the viability of any investments and that [Barash is] acting solely as an Escrow agent with respect to the funds advanced to [Barash]".

In opposition, plaintiff maintains that the escrow agreement does not define the parties' entire relationship and the quoted language refers only to defendants' escrow duties. He contends that Barash agreed to act as his attorney in connection with the acquisition of mortgage interests in plaintiff's name with the funds deposited with Barash as well as their sale. He points to language in the escrow agreement that: "Notwithstanding the foregoing, in the event that you are the closing attorney for a particular transaction (i.e. purchase of a Note and Mortgage), you agree that Escrow funds shall not be disbursed by you in connection with such transaction to the party designated by Shapiro unless you are in possession of either (a) a Note and Mortgage in which I am named the Mortgagee or (b) an Assignment of Mortgage naming me as the Assignee of the Note and Mortgage". In our view, however, this clause fails to support plaintiff's claim that Barash was acting as his attorney in such transactions. It simply sets forth Barash's duties as escrow agent in the event he also acted as the closing attorney in a particular transaction. The language is also fol-

lowed by the caveat that "[Plaintiff] understand[s] and acknowledge[s] that you are legal counsel to * * * Shapiro and * * * that your legal representation of * * * Shapiro may inherently create certain conflicts of interest with respect to me. * * * [Plaintiff] knowingly consent[s] to your representation of * * * Shapiro notwithstanding such potential conflicts of interest."

Plaintiff's proof, apart from the escrow agreement, consisted solely of his allegations that Barash agreed to act as his attorney, which Barash specifically denied. It is true that an attorney-client relationship may arise by words and actions of the parties (see, C.K. Indus. Corp. v C.M. Indus. Corp., 213 AD2d 846, 848); however, one party's unilateral beliefs and actions do not confer upon him or her the status of client (see, Jane St. Co. v Rosenberg & Estis, 192 AD2d 451, lv denied 82 NY2d 654). Here, there is nothing in the record to indicate that Barash either affirmatively led plaintiff to believe that he was acting as plaintiff's attorney or knowingly allowed plaintiff to proceed under that misconception (see, supra). Thus, plaintiff failed to set forth evidentiary proof demonstrating a triable issue of fact as to whether an attorney-client relationship existed. Plaintiff's cause of action for breach of contract should also be dismissed because it is based on Barash's alleged duty to act as plaintiff's legal counsel.

Turning to plaintiff's cause of action for negligent misrepresentation, we reject defendants' contention that this claim should have been dismissed. In order for a party to recover on such a claim, "there must be a showing [of] either actual privity of contract between the parties or a relationship so close as to approach that of privity" (Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377, 382; see, Ossining Union Free School Dist. v Anderson LaRocca Anderson, 73 NY2d 417, 424). A "special relationship" requires a closer degree of trust than an ordinary business relationship (United Safety v Consolidated Edison Co., 213 AD2d 283, 285-286). If a special relationship exists, the other side has a duty to impart correct information; if that information, however, is incorrect and one side reasonably relies on it, a claim for negligent representation will lie (see, Hausler v Spectra Realty, 188 AD2d 722, 724).

Here, plaintiff's claim that a special relationship existed is supported by the fact that Barash agreed to act as his escrow agent. Although the escrow agreement provided that "[plaintiff] acknowledge[s] that [Barash is] acting solely as a stakeholder at [plaintiff's] request and for [plaintiff's] convenience [and]

that [Barash] shall not be liable to [plaintiff] for any act or omission on [his] part" (see, *Dorsey Prods. Corp. v United States Rubber Co.*, 21 AD2d 866, *affd* 16 NY2d 925), plaintiff contends that Barash concealed or misrepresented the safety of the plan and that he relied on these representations. Plaintiff's averments, in our view, were sufficient to withstand defendants' motion even in light of the disclaimers made in the escrow agreement.

The next question is whether the cause of action alleging abuse of a confidential relationship should have been dismissed. Insofar as this cause of action was also premised on Barash's status as plaintiff's escrow agent, Supreme Court properly refused to dismiss it. Barash, as plaintiff's escrow holder, was in a fiduciary relationship with plaintiff and, therefore, owed him the highest degree of loyalty (see, *Director Door Corp. v Marchese & Sallah*, 127 AD2d 735, 736). Plaintiff contends that Barash assured him that even though the escrow agreement did not address the sale of mortgages, that was not a concern because Barash would be representing plaintiff's interests. Plaintiff claims that he believed those representations but they were not true. In our view, these averments raise a triable issue of fact as to whether Barash abused his fiduciary duty as escrow agent.

With respect to the causes of action seeking an accounting, we reject defendants' contention that the claims are moot because they have provided plaintiff with all the necessary materials. The record is incomplete concerning exactly what documents were actually received by plaintiff or whether they represented all the documents requested. Supreme Court, therefore, properly denied that portion of defendants' motion without prejudice to renewal pending completion of discovery.

Finally, we turn to the question of whether Supreme Court properly granted plaintiff's motion to amend his complaint to include a claim of fraud. Keeping in mind that permission to amend pleadings is to be freely given in the absence of prejudice or surprise and that it will not be denied unless the proposed amendment plainly lacks merit (see, *Ramundo v Town of Guilderland*, 108 AD2d 995), we cannot say that the court in this case abused its discretion in granting plaintiff's request (see, *Dumesnil v Proctor & Schwartz*, 199 AD2d 869). Defendants' remaining arguments in this regard have been considered and rejected as unpersuasive.

Mercure, Crew III, White and Casey, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' motion with respect

to plaintiff's third and sixth causes of action; motion granted to that extent, summary judgment awarded to defendants on the third and sixth causes of action and said causes of action are dismissed; and, as so modified, affirmed.