Richard LUCAS, M.D. and Mary Ann Lucas, Plaintiffs,

v.

James L. LALIME, Esq., John L. Kadow, David Miller, and Judy Kadow, Defendants.

No. 96–CV–0185A.

United States District Court, W.D. New York.

Feb. 13, 1998.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1)(B), on May 28, 1996. On January 20, 1998, Magistrate Judge Heckman filed a Report and Recommendation, recommending that plaintiffs' mo-

tion be denied and that defendants' motion be denied.

The Court having carefully reviewed the Report and Recommendation, the record in this case, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, both plaintiffs' motion and defendants' motion are denied.

The case is referred back to Magistrate Judge Heckman for further proceedings.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara to hear and report on dispositive motions in accordance with 28 U.S.C. § 636(b). Currently pending for decision are plaintiffs' motion for summary judgment on their third cause of action (Item 27) and defendant Lalime's motion for summary judgment on his affirmative defense of indemnification against co-defendant Miller (Item 29). For the reasons that follow, it is recommended that plaintiffs' motion be denied, and that defendant's motion be denied.

### BACKGROUND

Plaintiffs commenced this action on March 20, 1996, alleging that defendant Lalime disbursed $1,300,000 of plaintiff Dr. Lucas' funds out of trust contrary to an escrow agreement. The complaint advances numerous grounds for relief including breach of contract, breach of fiduciary duty, legal mal-

practice, conspiracy to defraud, fraudulent misrepresentation, conversion, obligation under constructive trust, and unjust enrichment.

It is uncontested that the events giving rise to plaintiffs' claims began on January 26, 1996, when Dr. Lucas met with Isidore Grossman [Grossman] of Page & Associates, Inc.,[1] Wayne Hawk [Hawk] of Hale Associates, Inc.,[2] and Mark Fried [Fried], a financial planner, to discuss investing in viaticals.[3] At the meeting, plaintiff was told of an opportunity to purchase viaticals and then roll them over in a short time through the JADA Trust [JADA] and American Express Financial Advisors, Inc.

In sum, plaintiff was told that he could participate in a program whereby he would purchase a viatical, but rather than hold the policy until the death of the viator, he would immediately assign his interest to JADA in return for 105 percent of the acquisition price. The proceeds from the sale to JADA would then be used to purchase a further viatical, with the process to continue until plaintiff chose to terminate his investment. Defendant Lalime and co-defendant Miller are the grantors and trustees of JADA Trust.[4]

As to the transaction itself, it was explained that plaintiffs' investment funds were to be forwarded to American Express. American Express would then issue a negotiable bill of exchange, maturing in 21 days in the amount of $1,365,000. That instrument would be sent to Northern Trust, the escrow agent for Page & Associates, Inc. Upon completion of the viatical transaction with Page, JADA was to acquire the life insurance policy rights by paying plaintiff 105 percent of his acquisition cost through an American Express account. The entire process would then recommence.

1. Page is a company in the business of locating, analyzing and purchasing life insurance policies.

2. Hale is a national marketer for a "major Viatical Company" (Item 27, Ex. A).

3. The term "viatical" refers to a transaction whereby an investor pays cash to a terminally ill patient in return for an assignment of the patient's death benefit. This permits a terminally ill person to receive funds from his or her life insurance policy for health care and other expenses, with the proceeds at death to be paid to the investor.

4. By an agreement dated February 1, 1996, Lalime and Miller formed JADA Trust for the benefit of Lalime's wife, Joan A. Lalime, and Miller's "confidante and companion," Bobbie Packard (Lalime Exhibit Book, Ex. O).

At the January 26, 1996 meeting, Lucas received forms to open an American Express account and also wrote a check in the amount of $1,300,000 payable to American Express. Plaintiff's check was forwarded to co-defendant John Kadow, who was to serve as the escrow agent to hold plaintiff's funds. Grossman, Hawk, Fried and Kadow all represented to plaintiff that John Kadow was affiliated with American Express (Lucas Deposition, p. 47). However, an account was not opened for the benefit of plaintiffs at that time, and plaintiffs' check was returned.

Although the parties disagree as to the circumstances surrounding the returned check, they do agree that Fried subsequently proposed that defendant Lalime be used as an escrow agent. Fried had obtained Lalime's name from co-defendant Miller, a trustee of JADA. All parties agreed to the use of Lalime, and on February 14, 1996, plaintiff Dr. Lucas signed an escrow agreement. The agreement was also signed by Miller, as representative of the JADA Trust, Wayne Hawk, on behalf of Hale Associates, defendant Lalime, as the trust escrow agent, and plaintiffs' attorney, Alex Murland, Esq., as the participant escrow agent. The agreement provides that Lalime would receive plaintiff's funds by wire transfer from Murland. Lalime was to provide a written receipt of funds and simultaneously cause the trust to have issued a negotiable bill of exchange maturing in 21 days (Lalime Exhibit Book, Ex. N).

The following day, on February 15, 1997, Murland wired $1,300,000 of Dr. Lucas's funds to an account in defendant Lalime's name at a Marine Midland Bank in Buffalo, New York, using bank coordinates supplied by Lalime. Those moneys were received by the James L. Lalime Esq. Attorneys Escrow Account # 741–78018–6 on February 15, 1996 (Item 27, Berrigan Affidavit, Ex. C). There was $7,241.04 on deposit in Lalime's escrow account prior to receipt of the Lucas funds (Id.).

On February 16, 1996, one day after receiving the funds, Lalime wire transferred $42,500 to a Merrill Lynch trust account established in Pennsylvania for the benefit of Bobbie Packard, defendant Miller's fiancee (Id.).

On February 20, 1996, Lalime wired $1,235,000 to the Western Corporate Federal Credit Union in San Dimas, California, to a Smith Barney account in his own name. These funds were then transferred to the South Bay Credit Union in Redondo Beach, California, to account # 130420 in the name of defendant Judith A. Kadow (Id. at Ex. D, p. 2).

On February 21, 1996, Lalime wire transferred $10,000 to First Union National Bank in Virginia, which was deposited to the credit of Bobbie Packard (Id. at Ex. C). On this same date, $850,000 of the California funds were wire transferred to the trust account of the House Law Firm in North Carolina (Id. at Ex. D, p. 3). The funds were used by Don R. House, attorney for David Miller, to purchase real property in the name of The Obbie'B—R.E. Trust in a transaction which closed on February 21, 1996.

A facsimile of a document purporting to be an American Express Bill of Exchange was received by Grossman or Hawk on or about February 22, 1996 (Lalime Exhibit Book, Ex. G). The document, dated February 22, 1996 and showing a maturity date of March 14, 1996, was later determined to be fraudulent. On the date the bill of exchange was purportedly issued, only $8,781 remained on deposit in Lalime's attorney escrow account.

On March 4, 1996, $25,000 was transferred from the South Bay Credit Union back to Lalime's account at Marine Midland Bank in Buffalo.

On April 18, 1997, plaintiffs moved for partial summary judgment with respect to their third cause of action as alleged against defendant Lalime. Their complaint states in pertinent part as follows:

61. For good and valuable consideration, Lalime, acting as an attorney and counsellor at law for and on behalf of plaintiffs, entered into the Escrow Agreement, ... as the Trust Escrow Agent, and thereby assumed the obligation of rendering professional services to plaintiffs and received from plaintiffs the sum of $1,300,000 [Dr. Lucas' funds].

62. Under the Escrow Agreement aforesaid, Lalime was required to use the Dr. Lucas' funds to secure a Negotiable Bill of Exchange maturing in 21 days in the amount of $1, 365,000 to be used for the purchase of viaticals.

63. Lalime, by reason of his lacking the requisite learning, skill or experience reasonably expected to be possessed by an attorney assuming the obligations of an escrow agent or because he failed to use reasonable care in the exercise of his duties as escrow agent, carelessly and negligently, by an act of legal malpractice, caused the escrowed funds to be forwarded to the control of the defendant John L. Kadow, thereby making them unavailable for the purchase of viaticals.

Plaintiffs argue that defendant Lalime committed legal malpractice when he failed to carry out the terms of the escrow agreement.

Defendant Lalime responded to plaintiffs' motion on May 6, 1997, arguing that the claim for legal malpractice must fail because there was no attorney-client relationship between plaintiffs and himself. Defendant also asserts that, should the court consider plaintiff's claim, there are genuine issues of fact as to whether he was negligent in performing his duties.

Defendant Lalime has moved for indemnification against co-defendant Miller on the ground that Miller admitted in his deposition testimony to exercising improper control over $902,500 of plaintiffs' funds.

### DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Coach Leatherware Co., Inc. v. Ann-Taylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir. 1991). "Entry of summary judgment indi-

cates that no reasonable jury could return a verdict for the losing party." *Id.* at 167.

As stated by the Second Circuit:

[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.... It must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994).

### II. Legal Malpractice.

■ Plaintiffs seek summary judgment on their claim that Lalime, "acting as an attorney and counsellor at law for and on behalf of plaintiffs," engaged in an "act of legal malpractice" (Item 1, ¶¶ 61 & 63). This court's jurisdiction to hear plaintiff's state law claims is based on diversity of citizenship. Because New York is the forum state, New York's choice of law rules determine which state's substantive law should apply. *Machleder v. Diaz,* 801 F.2d 46, 51 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987) (citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)).

■ New York's current choice-of-law rules require the court to consider the following three elements: the domicile of the plaintiff, the domicile of the defendant, and the place where the injury occurred. *Bonerb v. Richard J. Caron Foundation,* 159 F.R.D. 16, 18 (W.D.N.Y.1994); *Datskow v. Teledyne Continental Motors,* 807 F.Supp. 941, 943 (W.D.N.Y.1992). "When more than one of these is located in the same state, that state's law should ordinarily control." *Datskow, supra.*

In this case, defendant Lalime does not dispute that the law of New York—*i.e.,* the state in which Lalime resides and is admitted to practice law, as well as the situs of his

attorney trust account—applies to plaintiffs' claims.

■ To sustain a claim for legal malpractice under New York law, the plaintiff must establish that an attorney-client relationship existed between the plaintiff and the defendant, that the attorney acted negligently, and that the attorney's negligence was the proximate cause of the clients' injuries, and damages. *Harz v. United States,* 711 F.Supp. 114, 117–18 (S.D.N.Y.1989) (citations omitted); *O'Brien v. Spuck,* 99 A.D.2d 910, 911, 472 N.Y.S.2d 514 (3d Dep't 1984). It is a firmly established rule in New York that where there is no privity of contract, a plaintiff may not sue an attorney for simple negligence, absent proof of fraud, collusion, malicious acts or other special circumstances. *United Bank of Kuwait PLC v. Enventure Energy,* 755 F.Supp. 1195, 1200–1201 (S.D.N.Y.1989); *Scomello v. Caronia,* 232 A.D.2d 625, 648 N.Y.S.2d 688 (2d Dep't 1996) (plaintiff could not sue for legal malpractice on behalf of her children, where children were not in privity with plaintiff's attorney); *Michalic by Nakovics v. Klat,* 128 A.D.2d 505, 512 N.Y.S.2d 436 (2d Dep't 1987) (non-client mother could not sue father's attorney for mere negligence in handling custody litigation); *Viscardi v. Lerner,* 125 A.D.2d 662, 510 N.Y.S.2d 183 (2d Dep't 1986) (intended beneficiaries of will could not sue attorney who drafted will); *Conti v. Polizzotto,* 169 Misc.2d 354, 646 N.Y.S.2d 259 (S.Ct. Kings Co.1996), *aff'd,* 663 N.Y.S.2d 293 (2d Dep't 1997) (to sustain cause of action for legal malpractice sounding in negligence, privity must exist between plaintiffs and defendant).

In the present case, plaintiffs allege that Lalime acted negligently when he caused their escrowed funds to be transferred to the control of others. They do not claim that they ever retained Lalime as their attorney or that Lalime's conduct involved fraud, collusion, malicious acts or any other special circumstances. Plaintiffs do allege, however, that by acting as escrow agent, Lalime "assumed the obligation of rendering professional services" (Item 1, ¶ 61).

■ Mere deposit of funds into an attorney's escrow or trust account is not sufficient to establish the requisite attorney-client relationship. *Solondz v. Barash,* 225 A.D.2d 996, 997–98, 639 N.Y.S.2d 561 (3d Dep't 1996). In holding money in escrow, attorneys act as agents in a capacity which is not within the scope of their professional employment. *See Copalcor Mfg. Ltd. v. Meteor Industries Inc.,* 1988 WL 52194 (E.D.N.Y. May 16, 1988); *Randy Int'l Ltd. v. Automatic Compactor Corp.,* 97 Misc.2d 977, 412 N.Y.S.2d 995 (N.Y.City Civ.Ct.1979); *see also DeLeo v. Cohen,* 1990 WL 271119 (Conn.Super. May 14, 1990).

■ Plaintiffs have failed in this case to demonstrate the existence of an attorney-client relationship with Lalime. Nothing in the complaint, the escrow agreement or in the extensive record before the court suggests that plaintiffs sought services from Lalime beyond that of escrow agent. Indeed, it is clear that plaintiffs retained Alex Murland, Esq., to act as their attorney with respect to the subject transactions.

Accordingly, plaintiffs have not met their initial burden of establishing that they are entitled to judgment as a matter of law on a claim of legal malpractice.

In their reply brief, plaintiffs attempt to recharacterize their third cause of action as a claim for breach of fiduciary duty by stating that it is not "a garden variety malpractice claim, but, rather, is predicated upon the failure to Lalime to 'use reasonable care in the exercise of his duties as escrow agent' " (Item 36, p. 2). However, it is clear upon reading the complaint that the third cause of action is a claim of legal malpractice only. Furthermore, plaintiffs' recent characterization contradicts their original memorandum which states that "[t]he third cause of action is in the nature of a claim for legal malpractice." In fact, plaintiffs make a distinct claim against Lalime for breach of fiduciary duty in their second cause of action, a claim upon which they have not moved for summary judgment.

Defendant has had the opportunity to respond only to the cause of action upon which the motion was made—that is, the claim of legal malpractice. I decline to consider any of the six remaining claims that were not

made part of plaintiffs' motion, and to which defendant has not had occasion to respond.

Accordingly, it is recommended that plaintiffs' motion for summary judgment on the third cause of action be denied.

## III. Indemnification.

In his answer, defendant Lalime asserts the affirmative defense of indemnification as to all co-defendants (Item 15, ¶ 15). In the event that Lalime is found liable to plaintiffs, he now seeks summary judgment on indemnification with respect to co-defendant Miller. Lalime maintains that summary judgment is appropriate here because Miller admitted in his deposition to being "personally . . . responsible for $850,000, plus . . . $42,000 plus $10,000, based on the information we have here" (Miller Deposition, p. 58). Significantly, defendant Lalime does not cite any caselaw supporting the proposition that he is entitled to indemnification in this action.

 Defendant does not refer to any express contract to indemnify between himself and Miller, and therefore appears to base his claim on "quasi-contractual" or common law indemnification. Common law indemnification is rooted in equity and exists pursuant to a contract implied in law. *McDermott v. City of New York*, 50 N.Y.2d 211, 216–217, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980). In general, a right of implied indemnification will arise in favor of one who is compelled to pay for another's wrong. *Trznadel v. E.W. Howell Corp.*, 112 Misc.2d 244, 446 N.Y.S.2d 861, 867 (Sup.Ct. Nassau County 1981) (citing *Mauro v. McCrindle*, 70 A.D.2d 77, 80–81 (1979)); *Magwood v. Jewish Hosp. and Med. Ctr. of Brooklyn*, 96 Misc.2d 251, 408 N.Y.S.2d 983, 986 (Sup.Ct. Kings County 1978) (citing 28 N.Y.Jur., Indemnity, § 11, p. 27; *Margolin v. N.Y. Life Ins. Co.*, 32 N.Y.2d 149, 153, 344 N.Y.S.2d 336, 297 N.E.2d 80 (1973)). As between tortfeasors, the party whose negligence directly resulted in the plaintiff's injuries is primarily liable, and the party who is liable to the plaintiff by operation of law is secondarily liable. *Kelly*

*v. Diesel Constr. Div. of Carl A. Morse, Inc.*, 35 N.Y.2d 1, 7, 358 N.Y.S.2d 685, 315 N.E.2d 751 (1974). A tortfeasor seeking indemnification must have been only "passively" or vicariously liable to the injured party, and the indemnitor must be the actual negligent party. *Kurek v. Port Chester Housing Auth.*, 18 N.Y.2d 450, 276 N.Y.S.2d 612, 223 N.E.2d 25 (1966), *Allman v. Siegfried Constr. Co., Inc.*, 49 A.D.2d 357, 360 (1975). Indemnity, therefore, shifts the *entire loss* from a tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead. *Rogers v. Dorchester Associates*, 32 N.Y.2d 553, 565 n. 2, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973) (quoting Prosser's Law of Torts, § 51).

 Applying the standard set forth above, defendant's motion should be denied. First, the motion is premature. Summary judgment on the issue of indemnification is routinely denied where questions of fact still exist with regard to the movant's own negligence. *See Schieve v. Int'l Business Machines Corp.*, 157 A.D.2d 924, 925, 550 N.Y.S.2d 198 (3d Dep't 1990) (citations omitted). The record in this case is replete with conflicting evidence as to the liability of the various defendants.[5] Indeed, in response to plaintiffs' motion for summary judgment, Lalime does not assert that his disbursement of plaintiffs' funds was not negligent. He argues merely that questions of fact exist in that regard.

 Second, defendant Lalime claims that Miller is "currently in the possession of $902,500 of [plaintiffs'] funds" (Item 30, p. 11). However, nothing in the record indicates that this amount is the full extent of defendant's potential liability. As already stated, indemnity is the obligation that one tortfeasor owes to another to satisfy *in full* a judgment against the latter. An allegation that a tortfeasor is entitled to indemnification for only part of a judgment is actually a claim for contribution, not indemnity. *Magwood, supra*, 408 N.Y.S.2d at 986. Any question of contribution must be resolved by the trier of

5. For instance, while co-defendant Miller does state in his deposition that he is "responsible for" $902,000 of plaintiffs' funds, he precedes that statement with the declaration that this

amount "cover[s] Jim Lalime and myself" (Miller Deposition, pp 57–58). Miller goes on to state that he and Lalime agreed to transfer $52,000 of plaintiffs' funds (Id. at 79–80).

fact upon a determination apportioning liability among the defendants.

Accordingly, it is recommended that defendant's motion for summary judgment be denied.

### CONCLUSION

For the reasons set forth above, it is recommended that plaintiffs' motion for partial summary judgment (**Item 27**) be denied, and that defendants' motion for summary judgment on the issue of indemnification (**Item 29**) be denied.

Jan. 20, 1998.