*Groisman v. Jeffrey Zwick & Associates*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of January, two thousand twenty-six.

Present:

> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

DANIEL GROISMAN,

> *Plaintiff-Appellant,*

> v.

JEFFREY ZWICK & ASSOCIATES, JEFFREY ZWICK,

> *Defendants-Appellees,*

MOSHE FELER, AKA YOSEF FELER, AS ASSIGNEE OF A/K/A FELLER, LAW OFFICES OF N.C. CALLER P.C., CARL N. CALLER, JOHN DOES #1-5, XYZ CORPORATIONS #1-5,

> *Defendants.*

---

25-375-cv

1

For Plaintiff-Appellant:  JOSEPH H. NEIMAN, Hackensack, NJ

For Defendants-Appellees:  HENRY M. MASCIA (Cheryl F. Korman, Amanda R. Griner, *on the brief*), Rivkin Radler LLP, Uniondale, NY

Appeal from a judgment of the United States District Court for the Eastern District of New York (Carol B. Amon, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiff-Appellant Daniel Groisman appeals a January 22, 2025, order of the United States District Court for the Eastern District of New York granting Defendants-Appellees Jeffrey Zwick & Associates and Jeffrey Zwick's (collectively, "Zwick") motion for summary judgment on Groisman's claims for breach of fiduciary duty and aiding-and-abetting fraud.

The undisputed facts establish the following:   Groisman is a real estate investor and citizen of Argentina.   In 2011, Groisman became interested in investing in the United States, so his Israel-based real estate broker, Uriel Yeret, suggested that he contact third-party defendant Moshe Feler, also known as Feller, whom Yeret described as a successful real estate investor.   Groisman and Feler spoke by telephone and eventually settled on two potential investments in the United States: one in Queens, and one in Brooklyn.   In September 2011, although Groisman and Feler had not yet decided between the two opportunities, Groisman wired $3 million at Feler's direction to an attorney escrow account under the name "Carl N. Caller – Attorney Escrow Account."   App'x 456–57, 693–94.   Concurrently with the wiring instructions, Feler informed Groisman that Jeffrey Zwick was the attorney "working on this deal."   *See id.* at 456 (referring to an attorney named "Yitzchok Zwick," which the parties agree refers to Jeffrey Zwick).   At the time, Zwick, a real estate attorney, was working at the Law Offices of N.C. Caller P.C., a co-defendant owned by Carl

2

N. Caller (together with N.C. Caller P.C., "N.C. Caller"), and had a longstanding relationship with Feler. Groisman did not contact Zwick or anyone else at N.C. Caller before wiring the $3 million into the escrow account, or afterwards to confirm that the funds had been received.

In November 2011, Feler told Groisman that he had decided not to go forward with the Queens deal and offered to return Groisman's money—an offer Groisman did not take. Then, on December 29, 2011, Feler asked Groisman to review the details of a "new deal in [G]reenpoint Brooklyn," due to close on January 7, 2012. Groisman verbally authorized Feler to invest Groisman's funds in that deal in December 2011, and in January 2012, Feler told Groisman that the Brooklyn deal had closed. Feler did not provide a contract of sale, closing statement, or any other document to show that Groisman's money had been invested in the way that Feler had represented—and Groisman did not ask for any such document. Nor did Groisman contact Zwick regarding the supposedly closed transaction.

Unbeknownst to Groisman, there was no Brooklyn deal in which his money had been invested. Instead, in August and September 2012, Feler directed Zwick to transfer the $3 million to a different real estate investment in New Jersey. Two days before the bulk of the $3 million was transferred, Feler told Zwick for the first time that Groisman specifically provided the funds. Feler supplied Zwick with an operating agreement reflecting Groisman's supposed agreement to invest in an entity that would have a derivative interest in the New Jersey deal. The operating agreement had what purports to be Groisman's signature but, unbeknownst to Zwick, the signature was a forgery.

In July or August 2014, Yeret told Groisman that Groisman's funds had not been used in the Brooklyn transaction and had instead been used to fund the New Jersey project. Groisman enlisted an acquaintance to confront Zwick, who explained that Feler had presented him with an

operating agreement authorizing the use of the funds for the New Jersey deal. Zwick subsequently contacted Feler, who promised to provide documents showing that Groisman knew about the transaction. Feler never provided the documents. Groisman was eventually able to sell his interest in the New Jersey investment, recovering approximately "a million eighty." App'x at 245, 700.

Groisman eventually sued, asserting claims under New York law against Feler, N.C. Caller, Zwick, and several John Does. The district court dismissed on the pleadings all claims against N.C. Caller, and all claims against Zwick except those alleging malpractice, breach of fiduciary duty, and aiding and abetting Feler's fraud. After discovery, the district court granted summary judgment to Zwick on the remaining claims. The district court held that (1) Groisman had abandoned his legal malpractice claim; (2) the fiduciary duty claim failed because Zwick did not owe Groisman a fiduciary duty; (3) even assuming a claim for breach of fiduciary duty existed, it was time barred; and (4) the aiding-and-abetting claim failed because Groisman had not presented sufficient evidence to permit a reasonable jury to find that Zwick knew that Feler was engaged in fraud.

Feler never appeared or filed a responsive pleading in this case. In an order accompanying its decision on summary judgment, the district court directed Groisman to move for a default judgment against Feler. However, Groisman never did so (nor did he respond to the district court's order to show cause as to why the case should not be dismissed). Accordingly, the district court dismissed the case against Feler for failure to prosecute.

Groisman timely appealed the district court's grant of Zwick's motion for summary judgment.

## I.    Summary Judgment

"We review a district court's decision to grant summary judgment *de novo*, construing the evidence in the light most favorable to the party against which summary judgment was granted and drawing all reasonable inferences in its favor." *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 686 (2d Cir. 2023).[1]    Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."    Fed. R. Civ. P. 56(a).

### A.  Breach of Fiduciary Duty Claim

Groisman first challenges the district court's grant of summary judgment to Zwick on Groisman's breach of fiduciary duty claim.    To recover for breach of fiduciary duty, a plaintiff must prove "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct."    *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (quoting *United States Fire Ins. Co. v. Raia*, 942 N.Y.S.2d 543, 545 (2d Dep't 2012)).    Fiduciary relationships do not require a contract and can instead be inferred from the parties' conduct "where it can be readily seen that one party reasonably trusted another." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150–51 (2d Cir. 1993).    However, courts will not readily "infer and superimpose" a fiduciary relationship absent evidence that the parties "create[d] their own relationship of higher trust."    *Northeast General Corp. v. Wellington Advertising, Inc.*, 82 N.Y.2d 158, 162 (1993).    Instead, "special circumstances" are required to transform a "business relationship into a fiduciary one."    *Pauwels v. Deloitte LLP*, 83 F.4th 171, 183 (2d Cir. 2023).

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

While fiduciary duties can arise from an escrow agreement that is actually made between a depositor and someone who agrees to be the depositor's escrow agent, *Gargano v. Morey*, 86 N.Y.S.3d 595, 598–99 (2d Dep't 2018), "the mere delivery of the instrument or property to an escrowee does not constitute a transaction in escrow." *In re AppOnline.com*, 315 B.R. 259, 274 (Bankr. E.D.N.Y. 2004) (quoting *National Union Fire Ins. Co. Pittsburgh, Pa. v. Proskauer Rose Goetz & Mendelsohn*, 634 N.Y.S.2d 609, 614 (Sup. Ct. N.Y. County 1994), *aff'd*, 642 N.Y.S.2d 505 (1st Dep't 1996)). Accordingly, the mere deposit of funds into an escrow account does not create a fiduciary relationship (or an escrow agreement) between the depositor and the account holder. *See Shapiro v. Snow Becker Krauss P.C.*, 617 N.Y.S.2d 470, 470 (1st Dep't 1994).

The district court held, and we agree, that, on the undisputed facts, Zwick did not owe Groisman a fiduciary duty. At his deposition, Groisman admitted that he did not have an escrow agreement with Zwick, nor any other "writing." App'x at 132. Instead, Groisman argues that Zwick's receipt of his money into the N.C. Caller account gave rise to a fiduciary relationship, particularly when Zwick "became aware that the funds were not Feller's." Appellant's Br. at 18–19. But Groisman concedes that he never spoke with Zwick (or anyone at N.C. Caller) *at all* before Feler directed that Groisman's money be transferred to the New Jersey transaction: not when Groisman wired $3 million (without any instructions) to the escrow account; not after the initial Queens deal fell through; and not when the Brooklyn deal was supposedly completed. Indeed, Groisman allowed $3 *million* to sit in the escrow account for a year without contacting the entity (N.C. Caller) to which he transferred the funds. Groisman testified that he did not feel a need to provide any further details (or request assurances) regarding his funds because Feler and Yeret told him that Zwick "was going to represent" him and that, "sending the funds to a lawyer's account[,] you can be relaxed." App'x at 103–04.

6

Groisman's one-sided belief does not a fiduciary relationship make, nor did his unilateral deposit of funds into the escrow account. "Although [Groisman] may have reposed trust or confidence in [Zwick] by transferring the money into the [N.C. Caller] account, this does not give rise to a fiduciary duty because [Zwick] never accepted a relationship of trust or confidence with respect to [Groisman]." *Regions Bank v. Wieder & Mastroianni, P.C.*, 423 F. Supp. 2d 265, 270 (S.D.N.Y. 2006). When Feler told Zwick—his lawyer—that "the escrowed funds should be wired" to fund the New Jersey transaction, Zwick "was obligated to comply." *Id*. And, despite Groisman's speculative urging, there were "neither circumstances suggesting bad faith nor the total absence of any apparent authority" that would have put Zwick "on notice of an irregularity possibly triggering a duty to inquire," assuming that Zwick could ever be subject to such a duty. *Shapiro v. McNeill*, 92 N.Y.2d 91, 98–99 (1998).

In *Shapiro*, New York's highest court affirmed the dismissal of a claim brought against the defendant attorney by a nonclient plaintiff who wrote checks payable to the attorney (who represented the fraudster's accomplice) for a fraudulent real estate transaction. *See id.* at 94, 99. The court found that the attorney owed the nonclient plaintiff no duty because (1) the plaintiff "admittedly had no contact whatsoever, during the events leading up to this action," with the attorney; (2) there was concededly no escrow agreement between the plaintiff and the attorney; (3) there was no irregularity triggering a duty to inquire, assuming the attorney would ever be subject to such a duty; and (4) "despite the conceded absence of any relationship between [plaintiff] and [the attorney], [plaintiff] made the checks payable to [the] attorney without communicating to [the attorney] any instructions whatsoever." *See id.* at 94–99. Thus, under controlling New York law, Zwick did not breach any fiduciary duty when he wired Groisman's money to fund the New Jersey transaction.

7

To the extent that Groisman's claim for breach of fiduciary duty is premised on his belief that Zwick was acting as his lawyer, that argument also fails. "[O]ne party's unilateral beliefs and actions do not confer upon him or her the status of client." *Solondz v. Barash*, 639 N.Y.S.2d 561, 564 (3d Dep't 1996). Groisman also suggests that the rules of professional conduct imposed on Zwick a fiduciary duty to Groisman. But "an ethical violation will not, in and of itself, create a duty that gives rise to a cause of action that would otherwise not exist at law." *Shapiro*, 92 N.Y.2d at 97.

## B. Aiding-and-Abetting Fraud Claim

Groisman also challenges the district court's grant of summary judgment for Zwick on Groisman's aiding-and-abetting fraud claim. "To establish liability for aiding and abetting fraud, the plaintiff[] must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006). Actual knowledge, not constructive knowledge (meaning that someone *should have* known something), is required. *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014). "Because at trial a claim for aiding and abetting fraud must be proven by clear and convincing evidence, to survive summary judgment, Plaintiffs must have adduced sufficient evidence to meet this standard at trial." *Silvercreek Mgmt. Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 482 (S.D.N.Y. 2018). "[E]vidence that a defendant could or should have been able to deduce the fact of an underlying fraud on the basis of red flags or warning signs is not a substitute for actual knowledge." *Id*. at 487.

We agree with the district court that Groisman has failed to offer sufficient evidence to permit a reasonable jury to find that Zwick had actual knowledge of Feler's fraud. Groisman's proof of fraud boils down to his assertion that "surrounding circumstances" "underscore[d] the

8

dubious nature" of the New Jersey deal and that such circumstances should have "shocked" Zwick or "set off alarm bells." Appellant's Br. at 24–32. But none of the supposedly dubious "surrounding circumstances" Groisman points to—such as the fact that Feler told Zwick that Groisman was the source of the $3 million only two days before the New Jersey transaction closed, or that the operating agreement with the forged signature was not countersigned by Feler—constitute evidence of Zwick's actual knowledge of Feler's fraud. Such allegations do not create a dispute of fact sufficient to survive summary judgment. Moreover, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment"—which is exactly what Groisman's speculation about Zwick's state of mind amounts to. *FTC v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019). Groisman's aiding-and-abetting claim was properly dismissed.

*    *    *

We have considered Groisman's remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

9