506 P.2d 1074

**VIVIAN ARNOLD REALTY CO., Vivian Arnold, Individually, and Western Surety Company, Inc., Appellants,**

v.

**Jack A. McCORMICK and Barbara A. McCormick, husband and wife, and Homer H. Osborne and Dorothy Osborne, husband and wife, Appellees.**

**No. 2 CA–CIV 1226.**

Court of Appeals of Arizona, Division 2.

March 6, 1973.

DeConcini, McDonald & Brammer, P. C., by John R. McDonald and J. Wm. Brammer, Jr., Tucson, for appellants.

Vincent E. Odgers, Tucson, for appellees Osborne.

Kali & Allen, P. C., by David I. Kali and Carl B. Pratt, Tucson, for appellees McCormick.

HOWARD, Judge.

Subsequent to the trial court's denial of a motion for a new trial, defendants-appellants Vivian Arnold, individually, and Vivian Arnold Realty Company appealed. The trial court, sitting without a jury, made a ruling declaring a deposit and receipt agreement to be void and that the $500 earnest money deposit be returned to the purchasers, plaintiffs-appellees McCormick. The trial court also entered judgment in favor of (1) the sellers, defendants-appellees Osborne, against the appellants, who had been made defendants on a cross-claim by Osborne, in the amount of $500 for damages caused by appellants' negligence, (2) Vivian Arnold's salesperson, Carolyn Watchman, also a defendant on Osborne's cross-claim.

The salient facts leading to this litigation are as follows. On September 14, 1969, Jack A. McCormick and wife, residents of the State of Arizona, signed a deposit and receipt agreement to purchase a certain lot located in Pima County, Arizona, from Homer H. and Dorothy Osborne, residents of Colorado, with Vivian Arnold Realty Company as listing broker for the sellers. The terms of the sale as expressed in the agreement were that the purchasers paid $500 as earnest money at the time of the agreement and the remainder of the $6,000 purchase price was to be paid in cash at closing on or before November 14, 1969. The sale was contingent upon the purchasers being able to obtain financing for construction of a home on the property prior to closing. Arizona Land Title Company was employed as escrow agent, the agreement specifically providing that "all funds and instruments necessary to such closing shall . . . be deposited by the respective parties in escrow with the appropriate agent." In the event of a forfeiture of the earnest money the broker was entitled to one-half as compensation for services rendered.

On September 30th, Vivian Arnold wrote to the Osbornes advising that the home being built by the McCormicks on the subject lot involved a "package deal" and that the monies for the lot would come out of the "construction draws." Osborne replied in a letter dated October 12, 1969, that according to the deposit receipt and agreement, $6,000 was to be paid by the purchasers upon closing and if he had to wait for his money he wanted an additional $600 for his property. The following day, October 13th, Carolyn Watchman wrote to Mr. Osborne advising that he submit his deed to escrow in order for the McCormicks to obtain final approval of their loan.

On October 20th, Vivian Arnold wrote to Homer Osborne explaining that when Mr. McCormick made his offer on the lot he was not aware that Osborne would be paid in draws and would not receive the $6,000 in one payment. She asked that he give serious consideration to McCormick's *request* and sign an attached authorization

to receive payment for the lct in three construction draws as it would result in very little delay in receiving his money. Also attached was a prepared joint tenancy deed from the Osbornes to the McCormicks requiring the Osbornes' signatures. Mr. Osborne's responsive letter was dated October 27, 1969:

"Dear Vivian:

Let me know when you are ready to close according to the terms of the Deposit Receipt and Agreement and I will mail the deed to the Arizona Land Title and Trust Company."

There was no further correspondence between Vivian Arnold and the Osbornes until November 18th, four days after the agreed-upon date for closing, nor did Mr. and Mrs. Osborne submit the necessary deed to the escrow agent for such closing in accordance with the provisions of the deposit and receipt agreement.

At deposition, Mr. McCormick stated that during the first week in November, 1969, he had retained counsel and was advised that if he did not want to lose his deposit, he had to "come up with the six thousand dollars and close the deal." Mr. McCormick added:

"I didn't want to come up with six thousand dollars to close the deal, but I also didn't want to lose five hundred."

Mr. McCormick also acknowledged that he had met the financing contingency of the deposit and receipt agreement and had obtained the necessary $6,000 cash for closing after contacting his father in New Mexico who sent him the money. McCormick's position at deposition, in his complaint and on appeal is that he gave notice to Osborne's agent, Vivian Arnold Realty, by means of unanswered telephone messages left by his attorney that he was ready to close. Mr. McCormick, however, did not appear at the closing of escrow on or before November 14, 1969, nor did he present the necessary funds for closing. He claimed that it was his understanding

that he "would close the deal with Vivian Arnold Realty," despite his acknowledgement that he had read the deposit and receipt agreement, understood its terms, and was not at any time advised by Vivian Arnold or any member of her office that he was to close the sale through the broker. In short, Mr. McCormick did not present the required $6,000 to either Vivian Arnold Realty or to the appointed escrow agent. Within two days after the date set for closing, Mr. McCormick decided that he did not want to purchase the Osborne property, and brought the action below to recover his earnest money deposit of $500.

In summary, the McCormicks allege that they gave notice to Vivian Arnold Realty Company of their ability and readiness to perform their obligation under the deposit and receipt agreement, despite the fact that they did not deliver the required closing funds to either Vivian Arnold Realty or the escrow agent. The Osbornes allege that Vivian Arnold's failure to notify them that the McCormicks were ready to perform was an act of negligence causing them not to be ready to close the sale by submitting their deed to escrow, notwithstanding Vivian Arnold's testimony at trial that on and before the date set for closing she had no knowledge that the McCormicks had obtained the funds required for closing. At trial her attorney stated:

". . . As broker it's our position that neither party to this transaction lived up to the obligations of the deposit and receipt agreement."

I

## DID THE TRIAL COURT ERR IN DECLARING THE DEPOSIT AND RECEIPT AGREEMENT TO BE VOID AND IN ORDERING THE EARNEST MONEY REFUNDED TO APPELLEES McCORMICK?

The subject deposit and receipt agreement constituted a valid and binding bilateral contract containing mutual prom-

ıses on both sides, subject to a financing condition which was met by the potential buyers. Both parties were competent to contract, did so freely at arms length, acknowledged reading the agreement, and where therefore, bound by its terms. Apolito v. Johnson, 3 Ariz.App. 232, 413 P.2d 291, rehearing denied, 3 Ariz.App. 358, 414 P.2d 442 (1966).

The agreement clearly called for the parties to deposit in escrow the respective funds and instruments necessary for closing, and it is equally clear that both buyers and sellers breached these respective duties. It is not a satisfactory excuse on the part of McCormick that he "felt" he was to deal with Vivian Arnold, especially considering that he did not deliver the closing funds to her. Appellees Osborne themselves have no quarrel with the trial court's order and admit that both "McCormick and Osborne let the closing date pass by without tendering their required performances." Appellees Osborne also "unhappily admit that the Trial Court Judgment denying Osborne's request for specific performance, and decreeing return of McCormick's earnest money is most supportable, and should be affirmed."

On appeal we must consider the evidence and possible inferences therefrom in a manner most favorable to upholding the judgment of the trial court. Dietel v. Day, 16 Ariz.App. 206, 492 P.2d 455 (1972). The court below had the uncontradicted facts and the witnesses before it and made a ruling voiding the contract and restoring the parties to their respective positions prior to contracting. Since an appellate court will not overturn the trial court's judgment if there is any reasonable evidence to support it, Jerger v. Rubin, 106 Ariz. 114, 471 P.2d 726 (1970), and finding such evidence, we affirm the order below voiding the deposit and receipt agreement and ordering the earnest money returned to appellees McCormick. Since the listing broker was entitled to one-half the earnest money only in the event of a forfeiture, the broker's asserted claim of $250 fails.

II

## DID THE TRIAL COURT ERR IN FINDING ACTIONABLE NEGLIGENCE ON THE PART OF VIVIAN ARNOLD AND VIVIAN ARNOLD REALTY COMPANY AGAINST HOMER OSBORNE?

Appellees Osborne, for their cross-claim against appellants, alleged as follows:

". . . That the plaintiffs, McCormick, as intended buyers, . . . notified the defendants Carolyn Watchman, Vivian Arnold Realty Company, and/or Vivian Arnold, individually, or one or more of them, that plaintiffs-buyers, were ready, willing and able to perform, and to close the intended transaction, but that defendants, . . . either willfully or negligently failed to advise defendants Osborne thereof, with the result that defendants Osborne could not, and did not know of the readiness of the purchasers to perform and could not and did not then proceed to closing, all to the damage of the defendants Osborne."

Vivian Arnold's testimony at trial was that until November 18, 1969, four days after the appointed date set for closing, when she received a telephone call from Mrs. McCormick regarding a return of the earnest money, she had no knowledge that the McCormicks had been ready to close the sale on the Osborne lot. Her position is that at all times her actions were directed towards "just trying to get the two, get Mr. Osborne to sell and the McCormicks to buy"; that her actions did not constitute negligence; and that appellees Osborne have failed to prove any injury or damages.

The duties of a real estate broker as agent for a seller are well established. A real estate agent owes a duty of utmost good faith and loyalty to the principal, and one employed to sell property has the specific duty of exercising reasonable due care and diligence to effect a sale to the best advantage of the principal—that is, on

the best terms and at the best price possible. Haymes v. Rogers, 70 Ariz. 257, 219 P.2d 339 (1950); 12 Am.Jur.2d Brokers § 96 (1964). He is also under a duty to disclose to his client information he possesses pertaining to the transaction in question. Jennings v. Lee, 105 Ariz. 167, 461 P.2d 161 (1969).

The primary question, therefore, is whether appellants either failed to perform the above described duties or did so negligently to the detriment of appellees Osborne.

The necessary elements of actionable negligence, succinctly stated, are a duty, breach of duty, and injury resulting from the breach. In the absence of any one of these elements, no cause of action for negligence will lie. 57 Am.Jur.2d Negligence § 32 (1931). *See,* Berne v. Greyhound Parks of Arizona, Inc., 104 Ariz. 38, 448 P.2d 388 (1968).

The record shows no evidence of two necessary elements: A breach of Arnold's duty, and damage to appellees Osborne. On the contrary, Osborne stated at trial that he had received a copy of the deposit and receipt agreement and was aware of his obligations under the agreement, to wit, that he was to submit a deed to escrow prior to closing.

Concerning the element of damage, the trial judge made the following statements:

"And the only thing indicating there might have been some kind of damages in the pleadings, but as far as I know, so far as my recollection serves me, there was no testimony by Osborne or any witness the Court has heard indicating or putting a value on the damage he suffered, *or that he even suffered damage.*

*I don't think there was even a statement that he was damages* [sic]." (Emphasis added.)

The general rule of appellate review as to considering evidence in a light most favorable to sustaining the judgment, Dietel v. Day, supra, is subject to the exception that we must also rule as to whether as a matter of law there is any evidence to support the conclusion reached by the trier of fact. City of Phoenix v. Fine, 4 Ariz.App. 303, 420 P.2d 26 (1966).

We find no evidence in the record showing any loss suffered by the Osbornes as a result of the broker's actions. Since damages are an element of a cause of action for negligence, nominal damages cannot be awarded where there is a failure to prove those damages. 22 Am.Jur.2d Damages § 8 (1965). We find that Arnold's actions were at all times directed to effecting, and not hindering, a sale of the Osborne property. Therefore, that part of the judgment granting appellees Osborne $500 for damages is reversed and remanded for disposition consistent with this opinion.

HATHAWAY, C. J., and KRUCKER, J., concur.