849 P.2d 1374

**Ralph A. MELANCON, Jr., and Kristine Nord Melancon, husband and wife, Plaintiffs/Appellees, Cross–Appellants,**

v.

**USAA CASUALTY INSURANCE COMPANY, a Texas corporation, Defendant/Appellant/Cross–Appellee.**

No. 2 CA–CV 92–0059.

Court of Appeals of Arizona,
Division 2, Department B.

June 30, 1992.

Review Granted on Issues 1, 2 and 4, Denied on all other Issues; Cross–Petition for Review Denied May 4, 1993.

land, Phoenix, for defendant/appellant/cross-appellee.

Neil Vincent Wake, Phoenix, for amicus curiae Nat. Ass'n of Independent Insurers.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Ralph E. Hunsaker, Frank M. Fox and Christopher Robbins, Phoenix, for amicus curiae State Farm Mut. Auto. Ins. Co.

## OPINION

HATHAWAY, Judge.

This case arose because of a disagreement between an insurance company, appellant USAA Casualty Insurance Company (USAACIC) and its insureds, appellees Ralph and Kristine Melancon (Melancons), over the issue of appellant's taking depreciation on certain parts used to repair the Melancons' vehicle to reduce its coverage of those repairs after an accident with an uninsured driver.

The Melancons filed suit against USAACIC alleging that their collision claim was wrongfully handled. After a jury trial, a verdict was returned in the Melancons' favor in the following amounts: $286.89 for breach of contract; $2,500 for breach of the duty of good faith and fair dealing; and, $4,500,000 as punitive damages. The trial court denied USAACIC's motion to alter or amend the judgment, motion for a new trial, and motion for judgment notwithstanding the verdict. The trial court granted a motion for remittitur and reduced the punitive damage award to $2,000,000.

On November 12, 1986, Ralph Melancon was involved in an automobile accident with an uninsured motorist. The following day, USAACIC was informed of the accident. The Melancons filed a claim under their collision coverage for damage to their vehicle and under their uninsured motorist coverage for his bodily injuries. The uninsured motorist claim was satisfactorily resolved and is not a part of this litigation.

USAACIC assigned the appraisal of the Melancons' vehicle to Property Damage Appraisals (PDA), independent appraisers. The appraisal was completed on November

Arnett & Arnett by Wayne C. Arnett and Mark W. Arnett, Tempe, for plaintiffs/appellees/cross-appellants.

Kornblum, Ferry & Frye, P.C. by Guy O. Kornblum, E. Lynn Malchow and James E. Gibbons, Los Angeles, CA, Bess & Dysart, P.C. by Leon D. Bess and Timothy R. Hy-

17, 1986, and a check was issued to the Melancons and ABC Nissan, the repair facility, in the full amount of the appraisal, $2,441.43, minus a $250 deductible. No deduction for depreciation was taken from the initial appraisal. These repairs were to body parts. Notation was made that there might be additional damage to the front suspension discovered when the body panels were removed.

A second appraisal pertained to the front end damage and included the windshield, which had been cracked in the accident and fell into two pieces when removed in order to do some body repairs. USAACIC deducted depreciation in the amount of $286.39 for parts in the front end which it claimed were subject to wear and tear. Melancons objected to the taking of depreciation and this lawsuit followed.

On appeal, USAACIC raises four issues: (1) whether the evidence was sufficient to support a finding of bad faith by USAACIC; (2) whether the jury was insufficiently and incorrectly instructed on the issue of bad faith; (3) whether the punitive damage award was unwarranted and unsupported by the evidence; and, (4) whether prejudicial errors occurred in the trial court's evidentiary rulings which resulted in an unfair trial. Appellees, on cross-appeal, argue that the granting of the remittitur was error.

The National Association of Independent Insurers (NAII), as amicus curiae, raises the issue of the constitutionality of the punitive damage award. State Farm Mutual Automobile Insurance Company (State Farm), also as amicus curiae, argues that the trial court erred in instructing the jury based upon Department of Insurance Regulation A.C.R.R. R4–14–801, promulgated under the Arizona Unfair Claim Settlement Practices Act (A.R.S. § 20–461).

■ In defining its limit of liability, the policy issued by appellant to appellees stated: "Our limit of liability for loss will be the lesser of the: (1) Actual cash value of the stolen or damaged property; or (2) Amount necessary to repair or replace the property." The policy does not mention depreciation, much less expressly authorize

USAACIC to deduct it in determining the amount of coverage under subsection (2). USAA argued that "actual cash value" implies a reduction attributable to depreciation and that this term applied to subsection (2) as well as subsection (1). However, the plain language of the policy negates this contention. The policy states its limitations on liability in the disjunctive: Appellant would either pay the actual cash value of the damaged property *or* pay to repair or *replace* the damaged property, whichever was less. The policy did not state that "if new parts are used to replace parts subject to wear and tear, depreciation will be taken to the extent of the wear and tear." Here, appellant chose to replace the damaged parts. Nothing in the policy authorized a reduction in coverage for depreciation. We, therefore, affirm the jury's verdict for damages based on breach of contract in the amount of $286.89, the amount taken by appellant for depreciation.

Appellant raises numerous issues pertaining to the bad faith and punitive damages claims. Because we find that the jury was erroneously instructed, we reverse the judgment for consequential and punitive damages. We find the damages for breach of contract unaffected and, accordingly, affirm as to those.

■ Among the instructions given the jury were the following:

*Under Arizona law* an insurer is required to reply within ten working days on all pertinent communications from a claimant which reasonably suggests that a response is expected. [Emphasis added.]

An insurance company cannot deny a claim on the grounds of a specific policy provision, condition or exclusion unless reference to such provision, condition or exclusion is included in the denial.

Appellant made a timely objection to these instructions on the ground that they were taken verbatim from regulations promulgated by the Arizona Department of Insurance to flesh out A.R.S. § 20–461 which specifically prohibits any private right of action for a violation of the statute. We agree with appellant's position.

■ Jury instructions must be viewed as a whole to determine whether they collectively provided the jury with the proper rules for its decision making. *Andrews v. Fry's Food Stores of Arizona,* 160 Ariz. 93, 95, 770 P.2d 397, 399 (App.1989). Instructions that do not correctly state the law must be refused. *Durnin v. Karber Air Conditioning Co.,* 161 Ariz. 416, 419, 778 P.2d 1312, 1315 (App.1989). A jury verdict cannot stand if the instructions given create substantial doubt as to whether or not the jury was properly guided in its deliberations. *Id.*

■ A.R.S. § 20–461, the Arizona Unfair Claim Settlement Practices Act (the Act), provided that "[a] person shall not commit or perform with such a frequency to indicate as a general business practice any of the following:" [followed by sixteen numbered practices]. The Act expressly states that its provisions are "to provide solely an administrative remedy to the director for any violation of this section or rule related thereto." A.R.S. § 20–461(C). The Act states that its provisions do not create a private right or cause of action. The legislative intent for enacting the Act is stated to provide "solely an administrative remedy" for any violation of the Act or any rule related to the Act.

Appellees argue that the rule in question, rule R4–14–801, was promulgated under A.R.S. § 20–143 which gives the Director of the Department of Insurance authority to issue reasonable rules necessary to effectuate any provision of Title 20 (Insurance Code). We do not agree. The summary of the rule approved by the Attorney General discloses that R4–14–801 was adopted to effectuate the Act. It states: "This Rule defines certain minimum standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices." Pursuant to the clear and unambiguous language of A.R.S. § 20–461(C), neither the Act nor rule R4–14–801 creates a private right or cause of action. They are intended to provide solely an administrative remedy and have no applicability to an insured's claim against his insurance company.

■ Appellees argue, however, that their right of action is the tort of bad faith, not for a violation of the regulations. A "cause of action" is a single core of operative facts that entitle a person to sustain an action and seek a judicial remedy. *Alexander v. Chicago Park Dist.,* 773 F.2d 850, 854 (7th Cir.1985); *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 971 (5th Cir.1981). The implication of the challenged instructions is clear: If the jury found a failure to respond to pertinent communications within the time specified on the denial of the claim, then appellees were entitled to maintain an action and seek a judicial remedy. The trial court instructed the jury that violation of standards taken verbatim from the rule gave appellees the right to seek a judicial remedy. We find this in direct contravention of the express language of the Act.

■ Appellees also argue that the rule can be considered as a standard of conduct. Rather, we find that the Act was intended to give the department of insurance guidelines for determining whether an insurer's procedures and practices occur with such frequency as to indicate an unacceptable general business practice. If so, then the administrative remedy may apply. The provisions of the Act are operational, much like the ethical considerations governing the conduct of attorneys and other professionals. The provisions are expressly not a standard of conduct against which an insurer's conduct in handling an individual claim is to be measured for creating a claim for relief.

■ Appellees cite the Restatement (Second) Torts § 285 (1965) (the Restatement) as support for their position. That very authority defeats their argument. Comment b to § 285 provides in part:

In any or all of these respects the standard of conduct may be defined and established by a legislative enactment which lays down requirements of conduct, and *provides expressly or by implication that a violation shall entail civil liability in tort.* [Emphasis added.]

Therefore, before reaching the question of whether the Act or rule R4–14–801 estab-

lished a standard of conduct, it must first be determined whether the Act provides *expressly or by implication* that a violation would give rise to civil liability in tort. By the clear language of the act, the answer is no.

Assuming, arguendo, that the Restatement has any application where a statute expressly provides that it does not create a private right or cause of action, we believe § 288 of the Restatement governs. Section 288 is captioned "When Standard of Conduct Defined by Legislation or Regulation Will Not Be Adopted," and provides in pertinent part:

The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively

(a) to protect the interests of the state or any subdivision of it as such, or

(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public ...

Comment b to § 288 is particularly enlightening in explaining the difference in effect between regulations enacted to protect the interests of the community or public at large and those enacted for the protection of an individual:

b. Many legislative enactments and regulations are intended only for the protection of the interests of the community as such, or of the public at large, rather than for the protection of any individual or class of persons. Such provisions create an obligation only to the state, or to some subdivision of the state, such as a municipal corporation. The standard of conduct required by such legislation or regulation will therefore not be adopted by the court as the standard of a reasonable man in a negligence action brought by the individual.

As noted above, rule R4–14–801 was enacted solely to provide the Arizona Department of Insurance an administrative method to safeguard the public, not to provide a cause of action for any individual.

We believe the trial court erred in instructing the jury based on language taken directly from rule R4–14–801, thereby serving to create a private right of action in direct contravention of the Act. We believe the incorrect statement of the law misguided the jury to appellant's prejudice. Accordingly, the judgment is affirmed as to the damages for breach of contract, reversed as to the rest and remanded for further proceedings consistent with this decision.

Because of our reversal of the bad faith and punitive damages part of the judgment, we need not address the cross-appeal nor the constitutional issue raised by amicus curiae NAII. We do not address the evidentiary issues raised by appellant as we cannot anticipate the evidentiary posture should a retrial occur.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this decision.

FERNANDEZ, P.J., and DRUKE, J., concur.