*94
 
 OPINION OF THE COURT
 

 Levine, J.
 

 The plaintiff in this action, Dr. Edward Shapiro, seeks recovery of monetary losses sustained in a fraudulent mortgage investment scheme orchestrated by defendant John McNeill and nonparty David DeRosa. DeRosa tunneled some of the funds falsely procured from Shapiro through the escrow account of defendant Lloyd Bleecker, DeRosa’s attorney. At issue in this appeal is whether attorney Bleecker, by accepting and disbursing those funds, owed a duty of care to nonclient Shapiro that was breached when Bleecker failed to consult Shapiro before disposing of the funds.
 

 Shapiro admittedly had no contact whatsoever, during the events leading up to this action, with either Bleecker or DeRosa. His association with the defendants arose entirely out of his relationship with McNeill. Beginning in 1992, McNeill apprised Shapiro that, with the financial advice of his accountant David DeRosa, he had created a highly profitable real estate investment opportunity in which individual investments were pooled and used to acquire and resell real property mortgages. Relying on these representations, Shapiro gave McNeill a check for $20,000, payable to McNeill, for investment in the mortgage venture. Thereafter, McNeill convinced Shapiro to roll over his investment and his alleged profit several times until, as of August 1993, Shapiro believed that he had $50,000 outstanding in investments.
 

 McNeill next suggested that Shapiro contribute another $16,637.24, to be combined with proceeds from an earlier investment, to purchase a $25,000 mortgage interest in a real estate investment group that McNeill called “Qualified
 
 *95
 
 Enterprises.” Shapiro agreed, but, having become somewhat leery of the arrangement, made the check payable to “Lloyd Bleecker as attorney,” because he believed, based on McNeill’s advisements, that Bleecker, as DeRosa’s attorney, was handling the mortgage purchases for the investors. Shapiro made a notation on the check which read: “For Qualified Enterprises— Total investment is $25,000.”
 

 Approximately one month later, McNeill again approached Shapiro, this time with an opportunity to invest in a mortgage of. a property at 115 Hickory, Mt. Sinai, New York, which purportedly required $50,000 in certified funds. Shapiro made a check out for $50,000, once again to “Lloyd Bleecker as attorney” and, in the left-hand corner of the check, made the notation: “115 Hickory — Mt. Sinai, NY.” He then had the check certified and delivered it to McNeill.
 

 Upon receipt from Shapiro, McNeill delivered each check to DeRosa who deposited it in a bank account maintained by Bleecker at Citibank, entitled “Lloyd M. Bleecker Attorney Trust Account IOLA Account.” According to Bleecker’s uncontradicted averments, DeRosa characterized the deposits as payments earned by him on the sale of certain investments to Shapiro, and explained that he was simply utilizing the escrow account to facilitate the transfer of funds by Bleecker on other, unrelated matters with respect to which Bleecker was his attorney. For each deposit, DeRosa provided Bleecker with a written, signed memorandum reciting the amount deposited and specifying express instructions for distributing the funds to complete various legal transactions that Bleecker was handling.
 

 Specifically, DeRosa attested that “[t]he sum of $16,637.24 is due me from Dr. Eric Shapiro due to the purchase of my share in a first mortgage in the name of Qualified Enterprises” and that “[t]he sum of Fifty Thousand ($50,000.00) Dollars is due me from Dr. Eric Shapiro as my share in an investment in real estate located at 115 Hickory Street, Mt. Sinai, New York.” Bleecker disbursed the funds in accordance with the directions expressed by DeRosa in the memoranda, concededly without first making any inquiry of Shapiro.
 

 Eventually, Shapiro became suspicious of both McNeill and DeRosa, and communicated his misgivings to the Suffolk County District Attorney’s office. DeRosa subsequently was indicted and convicted of grand larceny. Shapiro received a pro rata share of partial restitution made by DeRosa and then
 
 *96
 
 commenced the instant action, demanding the balance of his entire investment from McNeill, and seeking to recover the amount channeled through the escrow account from attorney Bleecker. After McNeill was granted a discharge in bankruptcy, Shapiro and Bleecker moved for summary judgment against one another.
 

 Supreme Court granted Bleecker’s motion for summary judgment, dismissing the complaint, and the Appellate Division affirmed (238 AD2d 573). Both courts below agreed that there was no escrow agreement between Shapiro and Bleecker, and, therefore, no basis to hold Bleecker liable to Shapiro. We granted plaintiff leave to appeal, and now affirm.
 

 Shapiro has conceded, before us, that no escrow agreement existed between Shapiro and Bleecker. He argues, nevertheless, that he is entitled to judgment under a tort theory of liability, based upon a legal duty of inquiry or notice owed him by Bleecker. First, he claims that an actionable breach of legal duty occurred because Bleecker violated an attorney disciplinary rule, DR 9-102 of the Code of Professional Responsibility
 
 (see,
 
 22 NYCRR 1200.46), in failing to contact him before disbursing the proceeds of the checks. Alternatively, Shapiro argues that, by permitting DeRosa to deposit the checks personally, Bleecker used his escrow account in a manner analogous to a depositary bank, and thereby assumed the common-law duty that a commercial bank has to ascertain a drawer’s intention before disbursing proceeds of a check drawn to the order of the bank
 
 (see, Sims v United States Trust Co.,
 
 103 NY 472, 476).
 

 It is highly dubious whether DR 9-102 has any application to this controversy, much less the significance that Shapiro urges. That disciplinary rule imposes ethical duties on the part of an attorney to a nonclient third party when the attorney is in receipt of funds known to belong to the third party. Thus, upon receipt of such property, the attorney is obligated to “promptly notify a * * * third person of the
 
 receipt of funds
 
 * * * in which the * * * third person has an interest” and then “promptly pay or deliver to the * * * third person as requested * * * the funds * * * in the possession of the lawyer which the * * * third person is
 
 entitled to
 
 receive” (Code of Professional Responsibility DR 9-102 [c] [1], [4] [22 NYCRR 1200.46 (c) (1), (4)] [emphasis supplied];
 
 see also, Leon v Martinez,
 
 84 NY2d 83, 90).
 

 Notification would have been pointless here because Shapiro clearly contemplated that Bleecker was to receive the funds.
 
 *97
 
 Furthermore, Shapiro did nothing to put Bleecker on notice that he intended to retain entitlement to any of the proceeds of the checks. Indeed, the notations that Shapiro placed on the checks even supported DeRosa’s express representations, leading Bleecker to believe that the opposite was true.
 

 Were we, however, to conclude that Bleecker’s conduct was contrary to the standards set forth in DR 9-102, an ethical violation will not, in and of itself, create a duty that gives rise to a cause of action that would otherwise not exist at law
 
 (see, Drago v Buonagurio,
 
 46 NY2d 778, 779-780 [“the courts have not recognized any liability of the lawyer to third parties (based on an ethical violation) where the factual situations have not fallen within one of the acknowledged categories of tort or contract liability”]). Shapiro’s argument that
 
 Leon v Martinez (supra),
 
 supports a contrary conclusion in this case is unpersuasive.
 

 Unlike the instant matter, in
 
 Leon v Martinez,
 
 the defendant attorneys were on notice of a present assignment of a portion of a client’s cause of action (having drafted the assignment) and were held potentially liable for nevertheless distributing the entire proceeds of settlement to their client. Liability was premised not on a violation of DR 9-102 but, rather, on the fact that the attorneys had disregarded the assignment and, thus, were liable as any individual would be who knowingly facilitates the misappropriation of the property of another
 
 (see, id.,
 
 at 89). Indeed, DR 9-102 was not cited in
 
 Leon v Martinez
 
 as a basis of liability, but merely referenced to demonstrate that the imposition of liability for disregard of the assignment would not conflict with any ethical duty of the attorneys to transfer the entire proceeds of the settlement to their client
 
 (see, id.,
 
 at 89-90). Thus, neither DR 9-102, nor
 
 Leon v Martinez (supra),
 
 supports Shapiro’s argument that Bleecker had a legal duty to contact Shapiro directly before following his client’s instructions, the breach of which gave rise to civil liability.
 

 Shapiro’s alternative theory of liability is that Bleecker had a common-law duty of care, akin to that which a bank owes a drawer-depositor who deposits a check payable to the order of the bank, to inquire of the drawer-customer before disbursing the check proceeds
 
 (see, Hartford Acc. & Indent. Co. v American Express Co.,
 
 74 NY2d 153, 164;
 
 Federal Ins. Co. v Groveland State Bank,
 
 37 NY2d 252, 258,
 
 rearg denied
 
 37 NY2d 924;
 
 Arrow Bldrs. Supply Corp. v Royal Natl. Bank,
 
 21 NY2d 428, 431;
 
 Sims v United States Trust Co., supra,
 
 103 NY, at 476).
 

 
 *98
 
 In
 
 Hartford Acc. & Indent. Co. (supra),
 
 we declined to extend this duty to nonbank creditors who accepted checks, without inquiry, in payment of the debts of the drawer’s employee. The checks were made payable to the order of the creditors, but were drawn by a third party who owed no debt to the payees. This anomaly, analogous to that claimed here, was held not to deprive the nonbank payees of the status of holders in due course. We pointed out that this duty is most appropriately applied with respect to depositary banks, because of the contractual debtor/creditor relationship between a bank and its depositor which includes “an implicit understanding that the bank will pay out a customer’s funds only in accordance with its instructions”
 
 (Hartford Acc. & Indent. Co. v American Express Co., supra,
 
 74 NY2d, at 164). As we have already discussed, no comparable contractual relationship is asserted here.
 

 Assuming, without deciding, that those few cases relied on by Shapiro, where this Court has imposed a similar, strict duty of inquiry on a
 
 nonbank
 
 payee, are still good law after our decision in
 
 Hartford,
 
 such cases are distinguishable from the instant case. Thus, in
 
 Rochester & Charlotte Turnpike Rd. Co. v Paviour
 
 (164 NY 281), a defendant drawee was held to have acted in bad faith for failing to contact the corporate drawer before converting funds where the circumstances revealed that the check was not being used for corporate purposes
 
 (id.,
 
 at 284-285).
 

 Similarly, in
 
 Munn v Boasberg
 
 (292 NY 5), where a defendant drawee accepted the drawer’s check in payment of a third party’s debt to him, and
 
 where the check gave no indication why either the drawee or the third party had any right to the check proceeds,
 
 the Court held that the defendant drawee was obligated to make inquiry of the drawer before appropriating the funds
 
 (id.,
 
 at 8-9;
 
 cf., Hartford Acc. & Indem. Co. v American Express Co., supra,
 
 74 NY2d, at 165). Specifically, the Court stated that “the plaintiff’s check drawn to defendant’s order gave no appearance of authority to use the check for his own purposes and the defendant could not in good faith accept the check and apply the proceeds to the payment of [the third party’s] personal indebtedness to him”
 
 (Munn v Boasberg,
 
 292 NY,
 
 supra,
 
 at 8-9).
 

 Contrastingly to
 
 Rochester & Charlotte Turnpike Rd. Co. v Paviour (supra)
 
 and
 
 Munn v Boasberg (supra),
 
 here there were neither circumstances suggesting bad faith nor the total absence of any apparent authority on the face of the checks
 
 *99
 
 which would put Bleecker on notice of an irregularity possibly triggering a duty to inquire. To the contrary, there was nothing suspicious about DeRosa’s conduct, and the notations Shapiro made on the checks themselves provided a quite plausible basis upon which, in good faith, Bleecker could conclude that the checks were the property of his client, DeRosa. Moreover, the checks were made payable to Bleecker “as attorney,” and, thus, in light of the existing attorney-client relationship between Bleecker and DeRosa, on their face gave credence to DeRosa’s assertion that they were his property.
 

 Indeed, despite the conceded absence of any relationship between Shapiro and Bleecker, Shapiro made the checks payable to Bleecker as attorney without communicating to Bleecker any instructions whatsoever. It is evident, therefore, that Bleecker accepted the funds not as custodian of Shapiro’s property, but as DeRosa’s agent, believing that the funds were the rightful possession of his client. Under these circumstances, Bleecker did not assume the duties and responsibilities that a banking institution might have assumed in a similar situation.
 

 Thus, we conclude that nonclient Shapiro has failed to demonstrate that, under the facts presented, attorney Bleecker owed to him a legal duty.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order affirmed, with costs.