4 P.3d 395

**Joseph LOMBARDO and Jacqueline Lombardo, Husband and Wife, Plaintiffs–Appellants,**

v.

**Elaine ALBU and John Doe Albu, Husband and Wife; Phillip Mercurio, Jr. and Jane Doe Mercurio, Husband and Wife; Century 21 Alliance and Investment Group, an Arizona Corporation, Defendants–Appellees.**

No. 1 CA–CV 98–0113.

Court of Appeals of Arizona, Division 1, Department E.

July 13, 1999.

Review Granted May 25, 2000.

O'Connor, Cavanagh, Anderson, Killings-worth & Beshears, P.A., by George H. Mitchell, Kerry M. Griggs, and Christopher Robbins, Phoenix, for defendants-appellees.

## OPINION

LANKFORD, Judge.

¶1 Appellants Joseph and Jacqueline Lombardo, sellers in a residential real estate transaction, appeal from the summary judgment in favor of Elaine Albu, agent for the buyers. We affirm.

¶2 After making the Lombardos an offer, the buyers told Albu that they anticipated some difficulty obtaining financing. Albu did not disclose the buyers' financial situation to the Lombardos. The buyers failed to close escrow, and the Lombardos' home was sold by trustee's sale after they failed to make loan payments. The Lombardos sued Albu for her failure to disclose the buyers' financial difficulties. They also raised claims against their own real estate agent and against the mortgage company that had foreclosed on the house.

¶3 Albu moved for summary judgment. She argued that, as the buyers' agent, she owed no duty to disclose the information to the sellers. The trial court granted the motion, and the Lombardos appealed. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994).

¶4 Our review of summary judgment is *de novo*. We decide anew whether a party is entitled to judgment as a matter of law. *See Floyd v. Donahue*, 186 Ariz. 409, 411, 923 P.2d 875, 877 (App.1996). We affirm because Albu, the buyers' agent, owed the sellers no duty to disclose her clients' financial situation.

¶5 The Lombardos argue that Albu had either a statutory or a common law duty to disclose. Whether a duty existed is a question of law for the court to decide. *See Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). The determination is ultimately a policy decision. *See Cady v. State*, 129 Ariz. 258, 264, 630

Francis P. Smith, Phoenix, for plaintiffs-appellants.

P.2d 554, 560 (App.1981); *Contempo Constr. Co. v. Mountain States Tel. & Tel. Co.,* 153 Ariz. 279, 283, 736 P.2d 13, 17 (App.1987).

¶ 6 We reject the contention that such a duty existed. The pertinent portion of the statute relied upon by the Lombardos, A.R.S. section 32–2153(A)(3) (Supp.1998), provides that the real estate commissioner may suspend, revoke, or deny a license if the licensee or applicant "[d]isregard[s] or violate[s] ... any rules adopted by the commissioner." The regulation cited by the Lombardos, Arizona Administrative Code ("A.A.C.") R4–28–1101(A) provides:

> A licensee owes a fiduciary duty to his client and shall protect and promote the interests of the client. The licensee shall also deal fairly with all other parties to a transaction.

A.A.C. R4–28–1101(B) states, in relevant part:

> B. Each licensee participating in a real estate transaction shall disclose to all other parties to the transaction any information which the licensee possesses which materially and adversely affects the consideration to be paid by any party to the transaction, including, but not limited to, the following matters:
>
> . . .
>
> 2. Any information that the buyer or lessee is, or may be, unable to perform due to insolvency or otherwise.

¶ 7 The statute itself, A.R.S. section 32–2153, creates no duty to disclose. Nor is it clear that the Legislature intended to authorize the real estate commissioner to create that duty. The statute's apparent purpose was not to create tort liability for violations of its provisions, but to authorize the real estate commissioner to regulate agents' conduct. *Cf. Arizona Life & Disability Ins. Guar. Fund v. Honeywell, Inc.,* 190 Ariz. 84, 87, 945 P.2d 805, 808 (1997) (We interpret the statute in a manner consistent with the Legislature's apparent purpose.).

¶ 8 The regulations do indicate that the real estate commissioner may require an agent to disclose a buyer's inability to perform. *See* A.A.C. R4–28–1101(B)(2). However, the existence of an administrative regulation does not necessarily mean that a duty exists that, if breached, gives rise to liability in tort. The regulations at issue are similar to the Rules of Professional Conduct regulating attorneys, which were "not designed to be a basis for civil liability," but to "provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." Preamble, Ariz.R.Sup.Ct. 42.

¶ 9 The cases support this conclusion. For example, in *Alaface v. National Inv. Co.,* 181 Ariz. 586, 593–94, 892 P.2d 1375, 1382–83 (App.1994), we held that no right of action for damages existed by virtue of the subdivision reporting statutes. Instead, the purchaser was limited to the rescission remedy provided in those statutes. *Id.* In *Melancon v. USAA Cas. Ins. Co.,* 174 Ariz. 344, 347–48, 849 P.2d 1374, 1377–78 (App.1992), we held that an insurance regulation did not support a cause of action and instead created only an administrative remedy. "The provisions of the Act are operational, much like the ethical considerations governing the conduct of attorneys and other professional." *Id.* at 347, 849 P.2d at 1377; *see also Lewis v. Long & Foster Real Estate, Inc.,* 85 Md.App. 754, 584 A.2d 1325, 1328 (1991) (comparing real estate brokers to physicians, attorneys, or accountants, and determining that statutes regulating real estate field "set minimum guidelines for professional conduct"). Much like the Rules of Professional Conduct for lawyers, the real estate agent regulations provide the basis for monitoring and regulating the profession, but do not necessarily create a legal duty. *See Lopata v. Miller,* 122 Md.App. 76, 712 A.2d 24, 31 (1998) (determining that real estate agent had no duty based on licensing and ethical provisions of Maryland Code); *Johnson Realty, Inc. v. Hand,* 189 Ga.App. 706, 377 S.E.2d 176, 180–81 (1988) (stating that standards promulgated by the Georgia Real Estate Commission have no bearing on civil liability, but are "solely for the regulatory purpose of licensing"); *see also Shapiro v. McNeill,* 92 N.Y.2d 91, 677 N.Y.S.2d 48, 699 N.E.2d 407, 409 (1998) (concluding that an attorney's ethical violation "will not, in and of itself, create a duty that gives rise to a cause

of action"). Professional or disciplinary rules such as these serve purposes substantially different from those of civil liability. *See Baxt v. Liloia,* 155 N.J. 190, 714 A.2d 271, 277 (1998) (concluding that the Rules of Professional Conduct do not create a duty giving rise to a cause of action against an adversary's attorney because they serve purposes "substantially different" from those of civil liability).

¶ 10 The Lombardos contend that the statute and regulations should define the standard of care. This argument confuses the existence of a duty with the standard of care. Duty and standard of care are distinct and not to be confused. *See Markowitz,* 146 Ariz. at 355, 706 P.2d at 367 (explaining that the concept of duty should not be confused with the specific details of conduct).

¶ 11 The Lombardos compare this case to *Alaface,* in which we noted that a duty of disclosure exists under the subdivision reporting statutes. 181 Ariz. at 597, 892 P.2d at 1386. In *Alaface,* however, we did no hold that the statutes created a duty on agents. We held only that the statutes could be employed to define the agent's standard of conduct required under a common law duty. *See id.* at 593–597, 892 P.2d at 1382–86. We expressly stated that a common law duty existed. *Id.* at 595, 892 P.2d at 1384.

¶ 12 The dissent reads too much into *Red Carpet–Barry & Associates, Inc. v. Apex Associates,* 130 Ariz. 302, 635 P.2d 1224 (App. 1981). We held that a real estate listing agreement which contained no expiration date was void. *See id.* at 304, 635 P.2d at 1226. No tort claim was involved. Moreover, the court's holding relied principally on *Olson v. Neale,* 116 Ariz. 522, 570 P.2d 209 (App.1977), which in turn rested on a determination of contract and agency law. *See Olson,* 116 Ariz. at 524–25 & n. 2, 570 P.2d at 211–12 & n. 2. The statement is *Red Carpet–Barry* that real estate regulations "have the force and effect of law" is taken out of con-

text from *Herzberg v. David,* 27 Ariz.App. 418, 555 P.2d 677 (1976), *overruled by Southwestern Paint & Varnish Co. v. Arizona Dep't of Env. Quality,* 194 Ariz. 22, 24, 976 P.2d 872, 874, (1999). *See Red Carpet–Barry,* 130 Ariz. at 304, 635 P.2d at 1226.

¶ 13 Moreover, *Herzberg* merely held that an administrative rehearing rule was valid because it had been "adopted pursuant to statutory authority. Under these circumstances, the rule had the same force and effect of law." 27 Ariz.App. at 420, 555 P.2d at 679. Accordingly, the rule permitted the real estate commissioner to conduct rehearings, and rendered inapplicable the rule in a prior case that, "absent statutory authority to grant a rehearing, a quasi-judicial tribunal has no power to revoke, annul or modify a decision." *Id.* In short, we read *Red Carpet–Barry* as a contract case, not as a case which states that violations of the administrative regulations give rise to tort liability.

¶ 14 Nor does *Brown v. Arizona Dep't of Real Estate,* 181 Ariz. 320, 890 P.2d 615 (App.1995), imply the existence of a duty in this case. In *Brown,* we decided that pursuant to A.A.C. R4–28–1101(A), a real estate broker owed non-client buyers a duty of fairness. *Id.* at 328–29, 890 P.2d at 623–24. We interpreted the regulation to "require[ ] that a licensee deal fairly with all parties to a transaction, not only with a licensee's clients." *Id.* We agreed with California cases imposing on brokers a duty of honesty and fairness to all parties in real estate transactions, asserting that "Arizona should hold brokers to similar standards of open disclosure." *Id.*

¶ 15 However, *Brown* and the California cases it cited are very different from the case at hand. In those cases, the real estate broker engaged in unrevealed double-dealing by acting as both an agent and principal in the transactions without disclosing the dual role.[1] In *Brown,* the broker failed to reveal

---

1. In *Ward v. Taggart,* 51 Cal.2d 736, 336 P.2d 534 (1959), the defendant real estate broker, like the broker in *Brown,* acted as an indirect principal to the transaction. The plaintiff buyers submitted an offer to Taggart, the defendant broker, who then turned around and purchased the property from the sellers. Taggart then sold the

property to plaintiff buyers at a higher price. The defendant broker in *Nguyen v. Scott,* 206 Cal.App.3d 725, 253 Cal.Rptr. 800 (1989), also acted as an indirect principal in the transaction at issue. Like the defendant in *Ward,* the defendant broker in *Nguyen* received an offer from the plaintiff buyers, then allegedly failed to convey

his own financial and property interest in the transaction. *Id.* No evidence in this case suggests that Albu was a principal as well as agent in the transaction.

¶ 16 More importantly, however, *Brown* was a disciplinary case and not a tort case. We reviewed whether the Arizona Department of Real Estate had authority to revoke Brown's license under the regulations. Thus, we held merely that the agent violated the regulation, not that he was liable in tort.

¶ 17 Our recent holding in *Aranki v. RKP Investments, Inc.*, 194 Ariz. 206, 979 P.2d 534 (App.1999), is also not to the contrary. We held that the sellers' real estate agents were *not* liable to the buyers for failing to disclose defects in a house. *See id.* at 208, 979 P.2d at 537. As in this case, no allegation was made that the sellers' agents had made affirmative misrepresentations to buyers. *See id.* We also noted the "important distinctions" between claims against one's own agent and claims against the other party's agent, and held that buyers could pursue claims against their own agent. *See id.* at 210, 979 P.2d at 538.

¶ 18 Our decision is thus consistent with the holding in *Aranki.* We recognize that, in dictum, *Aranki* stated that the sellers' agents had a duty of fair dealing to the buyers. *See id.* at 208, 979 P.2d at 536. The opinion also speculated that the sellers' agents would have been liable had they known of defects and failed to disclose them to buyers. We are neither bound by nor persuaded by the dicta.

■ ¶ 19 The reason that courts do not impose tort liability in every instance in which someone violates an administrative regulation is this: The policies implicated when considering tort liability can differ from those in deciding regulatory policy. That is true in this case. Both the common law and the regulations require faithful performance by an agent to her principal. Albu owed fiduciary duties of loyalty to her own clients. *See Vivian Arnold Realty Co. v. McCormick,* 19 Ariz.App. 289, 293, 506 P.2d 1074, 1078 (1973) (stating that a "real estate agent owes a duty of utmost good faith and loyalty to the

principal....."). That is the primary responsibility of an agent: to serve her principal. *See id.* (explaining that an agent "has the specific duty of ... effect[ing] a sale to the best advantage of the principal...."). Recognizing duties to other parties to the principal's transaction undercuts the agent's duty to her principal to the extent that the principal's interests differ from those of the other parties to the transaction. Recognizing an agent's duty to third parties potentially places the agent in a conflict between duty to principal and duty to a third party.

¶ 20 There would be no conflict for the agent if her principal owed the same duty to the other party. That is, if the buyers had a duty to disclose their financial condition to the sellers, it would not conflict with their interest to also require their agent to do so. However, this Court has expressly rejected the notion that buyers and sellers have special duties to one another in real estate transactions involving the sale of a home. *See Oldenburger v. Del E. Webb Dev. Co.,* 159 Ariz. 129, 133, 765 P.2d 531, 535 (App.1988). In *Oldenburger,* we decided that no fiduciary duties exist between a buyer and a seller. We compared buying a home with "any consumer transaction." *Id.* We further recognized that buyers and sellers "have adverse interests—the seller to obtain the highest possible price and the buyer to pay the lowest possible price" and that "this seller-buyer relationship is not one in which either party voluntarily assumes responsibilities of special care or protection toward the other." *Id. Oldenburger* demonstrates that the interests of real estate buyers and sellers are conflicting. Thus, recognizing an agent's duty to the other party divides her loyalties between her principal and the other party to the transaction.

¶ 21 The existence of a conflict between a duty to the principal and a duty to the third party nevertheless does not end our inquiry. There might be a sufficiently compelling reason to impose a duty even were it to undercut the agent's ability to serve the principal. For example, information critical to the transaction but not accessible to the third party might be subject to disclosure. *Cf. Hill*

the offer to his client, the seller, but instead

purchased the property himself.

*v. Jones*, 151 Ariz. 81, 85, 725 P.2d 1115, 1119 (App.1986) (stating that seller must disclose termite damage "known to the seller but not reasonably capable of being known to the buyer"). However, the present case does not involve such compelling reasons.[2]

¶ 22 The sellers could have taken simple measures to protect themselves. They could have asked the buyers for a financial statement. They could have obtained a credit report. They could have required approved financing or prequalification for a loan as a condition of their promise to sell. We see no need to impose a duty on buyers or their agents to disclose adverse financial information when no request is made for them to do so.

¶ 23 On the other hand, the costs of recognizing a duty of disclosure could be substantial. A duty to reveal negative financial information arguably would not be limited to complete insolvency. Any information that reflected adversely on the buyer's ability to perform could be regarded as material and be subject to disclosure. Yet many potential buyers have some history of financial difficulty. To be safe from liability, buyers and their agents would be required to disclose detailed financial information without even being asked to do so. While in a single transaction this obligation might not seem overly burdensome, the total cost to the marketplace when multiplied by all transactions would be great indeed. It is far more efficient to allow the parties to decide what information must be exchanged. If the seller requests the information and the buyer or agent misleads the seller, then legal liability for misrepresentation protects the seller.

¶ 24 We hold that Albu had no duty to the sellers to disclose her principals' financial condition. A real estate agent generally has no duty of disclosure to non-clients. *See Haldiman v. Gosnell Dev. Corp.*, 155 Ariz. 585, 589–90, 748 P.2d 1209, 1213–14 (App. 1987) (determining that seller's agent owed

no duty of disclosure to purchaser); *see also Buffington v. Haas*, 124 Ariz. 36, 37–38, 601 P.2d 1320, 1321–22 (1979) (holding that broker had no duty to disclose to seller that she did not retain security interest in her property or to inform her of contents of escrow instructions where there was no agency relationship). Although our holding precludes recovery against the buyers' agent, it of course does not bar a claim against the sellers' own agent. In fact, it is clear that an agent owes its principals duties of good faith, loyalty, reasonable care and diligence, and disclosure. *See Haldiman*, 155 Ariz. at 588, 748 P.2d at 1212. If the breach of such a duty caused the Lombardos loss, they may recover against their own agent. *See Aranki*, 194 Ariz. at 208, 979 P.2d at 536.

¶ 25 Because the appellees had no duty to disclose the buyers' financial information, the trial court properly granted summary judgment for the appellees. Accordingly, we affirm.

THOMPSON, Presiding Judge, concurring.

NOYES, Judge, Dissenting.

¶ 26 Appellees claim that "real estate agents owe duties *only* to those parties in a transaction with whom they have established a valid principal-agent relationship" (emphasis in original). Because that claim is overbroad, summary judgment on that claim is erroneous. I respectfully dissent from the majority's holding that Appellees had no duty to Appellants. At a minimum, Appellees had a duty to deal fairly with Appellants.

¶ 27 Arizona real estate agents have a duty to deal fairly with all other parties to the transaction, and they have a duty to disclose certain material information, including any information that the buyer is or may be unable to perform due to insolvency or otherwise. *See* A.A.C. R4–28–1101(A) (quoted in ¶ 6, *supra*).

---

2. Our opinion thus differs markedly from the position that the dissent attributes to appellees and then attacks. We do not hold that real estate agents have no duties whatever to non-clients. Our position also differs from the dissent in another notable respect. We do not hold that

agents are subject to tort liability for breach of a general and unbridled duty "to deal fairly with all other parties to the transaction." Such a broad concept of duty greatly expands agents' liability and places them in a conflict between duty to principal and duty to others.

¶ 28 In *Brown v. Arizona Department of Real Estate,* this court concluded that R4–28–1101(A) imposed upon a real estate licensee a duty to deal in fairness with all other parties to a transaction. 181 Ariz. 320, 328–29, 890 P.2d 615, 623–24 (App.1995). *Brown* was a disciplinary action, but it agreed with the duty articulated in a case that "upheld a purchaser's cause of action against a real estate broker in the absence of an agency relationship." *Id.* at 329, 890 P.2d at 624 (referring to *Ward v. Taggart,* 51 Cal.2d 736, 336 P.2d 534 (1959)). The *Brown* court also cited *Nguyen v. Scott,* 206 Cal.App.3d 725, 253 Cal.Rptr. 800 (1989), for the proposition that "California imposes a similar duty of honesty and fairness to all parties in real estate transactions." *Brown,* 181 Ariz. at 329, 890 P.2d at 624. In regard to *Ward* and *Nguyen,* the *Brown* court stated, "We agree with the California standard. Arizona should hold brokers to similar standards of open disclosure." *Id.* at 329, 890 P.2d at 624.

¶ 29 As explained in *Red Carpet–Barry & Associates v. Apex Associates,* 130 Ariz. 302, 635 P.2d 1224 (App.1981), the real estate department's disciplinary regulations establish a duty that applies in civil actions as well as in disciplinary actions:

> The rules and regulations of the real estate department have the force and effect of law. A.R.S. § 32–2122(A) provides that it shall be unlawful for any person to act as a real estate broker without first securing a license and *otherwise complying with the provisions of chapter 32.* The Arizona courts have enforced these provisions. The purpose of the statutes is to regulate the conduct of real estate activities so the public may be protected.

*Id.* at 304, 635 P.2d at 1226 (emphasis in original, internal citations omitted).

¶ 30 In *Alaface v. National Investment Co.,* 181 Ariz. 586, 596, 892 P.2d 1375, 1385 (App.1994), this court considered subdivision disclosure statutes and concluded that, because those statutes were enacted for the protection of the public, they imposed a duty and articulated the standard of care. The same is true here. The real estate department regulations in question were enacted for protection of the public, and they therefore impose a duty and articulate the standard of care.

¶ 31 In the trial court, Appellees came close to admitting that they had a duty to disclose certain information to Appellants:

> THE COURT: Does a broker who knows that a person who is purporting to be a buyer has absolutely no way of obtaining financing have a duty to tell [the sellers] that there's no way these people are going to obtain financing?

> [APPELLEES' COUNSEL]: On those facts, your Honor, I would most likely agree that an agent who basically knows they're not presenting a willing buyer shouldn't fool with the other side on the transaction.

What Appellees are really arguing here is that Appellants have facts that are much weaker than those in the court's question, and those facts need not have been disclosed. But the strength of Appellants' facts is relevant only to the breach issue; it is not relevant to the duty issue, the only issue before us at this time.

¶ 32 If Appellees had no duty to deal in fairness with Appellants, they had a license to deal unfairly with them. The very purpose of the licensing statutes and regulations is just the opposite; it is to regulate the conduct of real estate activities so the public may be protected from unfair dealing and other malpractices.

¶ 33 Summary judgment to Appellees on the duty issue should be reversed.