■ Arkin Kaplan LLP, Appellant, v Thomas W. Jones, Respondent. Arkin Kaplan LLP, Respondent, v Thomas W. Jones, Appellant. [840 NYS2d 48]—

Order, Supreme Court, New York County (Karen S. Smith, J.), entered May 2, 2006, which granted plaintiff's motion for partial summary judgment to the extent it sought dismissal of defendant's counterclaims, and denied the motion to the extent it sought summary judgment on plaintiff's first cause of action, unanimously modified, on the law, to grant plaintiff summary judgment on the first cause of action, and otherwise affirmed, without costs, and the matter remanded for further proceedings.

In October 2004, defendant Thomas W. Jones was told by his employer, nonparty Citigroup Inc., that Citigroup intended to terminate his employment as head of its Global Investment Management Division.[1] Citigroup's decision to terminate Jones's at-will employment came in the wake of a scandal involving his division's operations in Japan. Jones, believing that he had viable claims against Citigroup for public statements that (in his view) unfairly placed blame for the scandal on him, retained plaintiff Arkin Kaplan LLP, a law firm, to represent him in efforts to resolve such claims.

The terms of Jones's engagement of Arkin Kaplan are set forth in a retainer agreement dated October 29, 2004. The retainer agreement placed a "cap" of $1 million on Arkin Kaplan's hourly fees, and further provided that the firm would be entitled to a "Success Fee" to be computed on amounts in excess of $1 million, net of hourly fees actually paid, that Jones ultimately received, whether through settlement or litigation, subject to the following limitation: "The Success Fee will be computed only on amounts in excess of current vested entitlements, or entitlements to be vested by January 2006." As relevant to this appeal, the retainer agreement provided that there would be a 10% Success Fee on eligible amounts recovered between $1 million and $10 million.

In March 2005, Arkin Kaplan sent Citigroup a draft complaint asserting causes of action for defamation, civil conspiracy and prima facie tort. Thereafter, Jones and Citigroup reached a settlement under which, inter alia, Jones received a $5 million lump-sum cash payment and Citigroup issued a public state-

---

**1.** Although Citigroup initially intended Jones's termination to take effect in December 2004, the effective date of termination was ultimately deferred to February 22, 2005.

ment disclaiming "any suggestion of wrongdoing or violation of law on [Jones's] part." A dispute then arose between Arkin Kaplan and Jones as to whether the settlement with Citigroup entitled the firm to a Success Fee. This action ensued.

Arkin Kaplan's complaint seeks to recover, inter alia, a Success Fee based on the $5 million payment Jones received from Citigroup.[2] Jones contends that Arkin Kaplan is not due any Success Fee based on the $5 million payment by reason of the retainer agreement's provision that the Success Fee "will be computed only on amounts in excess of current vested entitlements, or *entitlements to be vested by January 2006*" (emphasis added). While Arkin Kaplan contends that the italicized phrase refers only to entitlements that actually become vested by January 2006, Jones take the position that such language means all compensation to which he would have had a "vested" entitlement if Citigroup had continued to employ him through January 31, 2006. Jones estimates the value of the compensation he claims he would have received through January 31, 2006, had he not been fired, at $13.9 million. Such putative compensation includes salary that would have accrued after his termination took effect on February 22, 2005; bonuses for 2004 and 2005; and stock awards and options that would have vested after the effective termination date. Based on this estimated $13.9 million of compensation that would have "vested" but for his termination, Jones argues that the $5 million settlement payment he received from Citigroup was not "in excess of currently vested entitlements, or entitlements to be vested by January 2006."

After joinder of issue, Arkin Kaplan moved for partial summary judgment, seeking judgment on its right to a Success Fee on the $5 million settlement payment (the first cause of action) and dismissal of the counterclaims asserted in Jones's answer.[3] In opposing the branch of the motion addressed to the first cause of action, Jones argued that the relevant contractual language is ambiguous and its interpretation therefore raises a triable issue of fact. Supreme Court, while dismissing Jones's counterclaims, agreed that the phrase "entitlements to be

---

2. As clarified by the record, Arkin Kaplan claims that the Success Fee due on the $5 million settlement payment is $365,556.75, calculated as follows: $5,000,000 less $344,432.50 (Arkin Kaplan's hourly fees) gives a net recovery of $4,655,567.50; 10% of the portion of this amount over $1 million ($3,655,567.50) is $365.556.75.

3. Arkin Kaplan's motion did not seek summary judgment on its second and third causes of action, which seek a Success Fee based on Jones's income resulting from Citigroup's agreement to invest $50 million in the venture capital and private equity fund he now manages.

vested by January 2006" was reasonably susceptible to his interpretation and therefore denied Arkin Kaplan summary judgment on the first cause of action. Each party has filed an appeal from this order. We now modify to grant Arkin Kaplan's motion in its entirety.

Whether a written agreement is ambiguous—that is to say, reasonably susceptible of more than one interpretation—is a question of law to be determined by the court from the face of the document, without reference to extrinsic evidence (*see Reiss v Financial Performance Corp.*, 97 NY2d 195, 199 [2001]; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162-163 [1990]; *Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]). Here, the contractual language at issue—"entitlements to be vested by January 2006"—is not, on its face, ambiguous. The phrase plainly refers to entitlements that will actually "vest" (pursuant to the terms of Jones's employment) within the stated time frame, not to entitlements that would have vested had Jones's employment not been terminated. If the latter had been intended, the parties (both of whom are highly sophisticated and experienced in business matters) could readily have used language unmistakably expressing it, such as "entitlements that would have vested by January 2006 had your employment not been terminated," or, alternatively, "entitlements that are scheduled to vest by January 2006 but for your termination." Instead, the retainer agreement refers to "entitlements *to be* vested by January 2006" (emphasis added), which cannot reasonably be read to refer to entitlements that, at the end of the stated period, have not actually vested.[4]

Finally, Supreme Court properly granted Arkin Kaplan summary judgment dismissing Jones's counterclaims. With respect to the first counterclaim, no triable issue of fact has been raised as to whether the alleged loss was proximately caused by conduct of Arkin Kaplan (*see Pellegrino v File*, 291 AD2d 60, 63 [2002], *lv denied* 98 NY2d 606 [2002]); on the contrary, the record establishes that Citigroup's actions proximately caused

---

4. We note that construing the contractual language at issue in accordance with its plain meaning does not deprive it of effect. It is undisputed that, when the retainer agreement was executed in October 2004, Jones's termination had not yet become effective, so it was still possible for vesting of entitlements to occur in the future. As is also undisputed, Arkin Kaplan persuaded Citigroup to defer the effective date of termination from December 2004 to February 22, 2005, which, in addition to prolonging the payment of salary, allowed certain stock rights to vest that otherwise would have been lost. Arkin Kaplan does not seek a Success Fee based on the compensation and benefits Jones earned from the time he retained the firm to the effective date of his termination.

Jones's injury. The allegations of the second and third counterclaims were disproved by the documents submitted by Arkin Kaplan (*see Dweck Law Firm v Mann*, 283 AD2d 292, 293 [2001]); moreover, Jones's claims for damages were too speculative (*see Feldman v Jasne*, 294 AD2d 307 [2002]; *Pellegrino*, 291 AD2d at 63-64; *Dweck*, 283 AD2d at 294). With respect to the third counterclaim, we also note that even if a violation of the Code of Professional Responsibility had occurred, that, in itself, would not create a private right of action (*see Kantor v Bernstein*, 225 AD2d 500, 501-502 [1996]; *see also Shapiro v McNeill*, 92 NY2d 91, 97 [1998]). Concur—Mazzarelli, J.P., Friedman, Nardelli, Gonzalez and Catterson, JJ. [*See* 12 Misc 3d 1160(A), 2006 NY Slip Op 50979(U).]